## WHITWELL v. BARBIER et al.

A personal judgment of a Court of general jurisdiction is invalid for the purpose of acquiring any rights under it, when it appears affirmatively upon the face of the record that the Court had acquired no jurisdiction over the person of the defendant.

There is, however, a very decided distinction between want of jurisdiction and irregularity in procuring jurisdiction.

In the one case, the judgment can be attacked in any form, directly or collaterally; in the other, only by a direct proceeding against the judgment in the Court which rendered it, or in an appellate Court upon appeal from the judgment.

The true test is, whether the omission be of the form or of the substance of the act required to be performed.

Where a defendant was served with process, but was not given the time allowed by statute to appear and answer, it would be a sufficient reason for the Court to quash the writ on motion by an amicus curiæ, or for extension of the time on defendant's motion, or a good objection on writ of error, arrest of judgment, or motion for a new trial; but it cannot be said that the Court had no jurisdiction of the person so as to make its judgment a nullity.

APPEAL from the District Court of the Twelfth Judicial District.

This was an action instituted to recover possession of an undivided one-third of a certain lot of land in San Francisco.

Both parties claim title under Louis Lacour; the plaintiff by a deed from Lacour made in 1855; the defendants, under a sheriff's deed under a judgment obtained against Lacour in 1852—the sheriff's sale taking place in that year.

The record shows that the judgment under which defendants claim, was obtained in the District Court of the Fourth Judicial District, in an action of P. Maury, Jr., v. L. Lacour, and defendants produced the judgment-record in evidence—the judgment-roll was also introduced by the plaintiffs; that the summons in that case was issued October 6th, 1851, directing the defendant, Lacour, to answer in ten days after service; that it was served in Tuolumne county, December 27th, 1851; that on December 11th, 1851, an order of publication of summons was made, on the affidavit of defendant stating the non-return of summons and the supposed impossibility of finding the defendant. The judgment-roll in that case does not show any publication. Judgment was entered against Lacour, February 6th, 1852, by default.

On the trial of this cause, however, the defendants proved by the attorney of the plaintiff in the case of Maury v. Lacour, that publication of summons in that case was in fact made as required by the order therein; and it also appears charged as an item of disbursements in plaintiff's bill of costs in that action. An attachment was also issued with the summons, under which the premises in question were attached.

The Court below entered judgment for the plaintiff. Defendants appealed.

*McDougall, Aldrich,* and *Sharp,* for Appellants.

It will at once be perceived that the plaintiff, in the Court below, proceeded upon the idea that the judgment against Lacour was void, and the Court below so regarded it.

We contend that the Court below erred in its judgment, for the following reasons:

1. The Court in which the judgment against Lacour was rendered, is a Court of general jurisdiction. "Every presumption is in favor of its jurisdiction." It had jurisdiction of the subject matter, and if its judgment is rendered without showing any notice to the defendant, it is equally valid when it comes up collaterally as though it showed the most complete notice to the defendant. This position is not questioned by any authority. Indeed, some of the most respectable authorities lay down the rule, that when a Court of general jurisdiction has jurisdiction of the subject matter, its judgment rendered without any notice to the defendant, cannot, in any instance, be treated as void, when that judgment comes up collaterally. And we here ask the particular attention of the Court to the case in 6 English Ark. R., cited below, in which this subject is discussed, and the cases relating to it, reviewed with great ability. In this case it is declared to be the correct rule of law that "the judgments of Superior Courts are not void, but only voidable by plea on error."

The same general proposition is maintained in the cases reviewed in the American Leading Cases, cited below.

But it is not necessary to recognize the rule laid down in the case cited from the Arkansas Reports, to the extent that it is there asserted for the purposes of this case. It is an admitted proposition of law, that a purchaser at a sheriff's sale claiming title under that sale, is bound only to show a judgment, levy, and sheriff's deed.

The question is here fairly presented, whether or not the entry in the judgment-book of the Court, was properly the judgment in the case, and if so, whether the Court could go behind that judgment, and by an inspection of the papers, inquire whether proper service had been made. By reference to the law in force at that time, it will appear that the judgment proper was the entry from the records of the Court, that was read in evidence. See Statutes of 1851, p. 73; also, p. 82, Stat. 1851, §§ 197, 201, 203.

Can it be doubted, then, that the entry read by the defendants was the judgment to which the purchaser was to look, and did look, for his security in making the purchase which he made of Lacour's interest of the property in dispute? or are we to suppose that the Legislature intended that the judgment-creditor and purchaser should rely for his security upon the permanent

records of the Court, and not upon loose pieces of paper, so liable to be lost, mislaid, or destroyed.

A question involving this very point has arisen in Michigan, in the case cited below, and our view as to what constitutes the judgment, affirmed.

In the second volume of American Leading Cases, after a careful review of all the American authorities on this subject, the author of the notes to these cases concludes his review of the cases, on the particular branch of the law applicable to this case, with the following remarks : " These authorities appear fully sufficient to establish the just and salutary principle that what is done by a judicial tribunal possessing general powers, and within the scope of these powers, must be deemed to have in itself the force necessary for its own support, and cannot be called in question, except by the regular modes of examination, which are provided for the investigation of real or imputed error in judicial proceedings."

In support of the position taken by the appellants upon this point in the case, we cite the following authorities : 2 American Leading Cases, Hare and Wallace notes, 733, et seq., and the cases therein reviewed; 18 Pick., 393 ; 17 Wend., 483 ; 2 How. Sup. Ct., 319 ; 6 Eng. Ark. R., 519 ; 1 Mann. Mich. R., 56 ; 4 Cal. R., 291 ; Stat. 1851, 73, 74, 82.

2. If the Court should determine that the preceding position taken by the appellants is not tenable, and that it was proper to allow an inquiry into the proceedings upon which the judgment was rendered against Lacour, to ascertain whether due service had been made upon him, we say that there is nothing in those proceedings to render the judgment against him invalid. In other words that the service was sufficient for jurisdictional purposes.

No judgment was taken against him until the expiration of forty days after the service.

In Pollock v. Hart, 2 Cal. R., 193, cited by respondent, this Court, in considering the question of the sufficiency of the summons, remarks that "the object of the summons is to put the party upon notice of the demand against him."

It is conceded that when jurisdiction is once acquired, no subsequent error of the Court, however wrongful in its character, can invalidate its proceedings, the only remedy being upon error. If this be so, the Court does not depend for its jurisdiction over the person, upon the expiration of the time which is allowed him to answer, but acquires control for jurisdictional purposes so soon as the summons is served.

The Court had the right to decide upon the sufficiency of the service. No authority can be found adverse to this position. In the decision cited from, 2 Cal., p. 194, it appeared that the

summons was issued in conformity to the act of 1850, when it should have been issued under the act of 1851.

Can it be contended that this summons was void? Was it not issued according to the formalities of the law? Had it not the seal of the Court and the attestation of the proper officer? Did it not advise the defendant of the nature of the proceedings against him? Was it not accompanied by the complaint also served? What was there to render it void except the omission of the time allowed by the statute for appearance, in the event that it was served out of the county. It cannot be disputed that the defect is in the service; that the summons was not originally void, is clear.

The question was clearly within the jurisdiction of the Court. It came up regularly in the course of the proceedings in the case, and the decision of the Court cannot be impeached, except on error. 2 Cal. R., 194; 10 Peters. 449; Stat. 1851, p. 56, § 35.

3. It appears by the papers in the case, that the defendant, Lacour, had constructive notice of the proceedings against him, by the publication of the summons. It does not appear from the judgment upon what evidence of service the Court rendered its judgment, nor is it for this Court to determine whether the entry of judgment upon the evidence of publication, when it appeared by the return of the sheriff that the defendant was actually within reach of the process of the Court and might be personally served, operated as a gross wrong to the defendant or not.

4. The respondent's counsel have cited numerous cases, which they have attempted to apply to the case before the Court. Upon a review of these cases it will be found that almost all of them are cases in which the validity of the judgments in question was controverted by proceedings in error, and not where they come up collaterally.

*Whitcomb, Pringle & Felton,* for Respondent.

The plaintiff contends:

1. That the pretended judgment, under which the defendants claim title, is an absolute nullity, because the Court never acquired jurisdiction over the person of Lacour, by due process of law.

2. That this want of jurisdiction is apparent on the record of the judgment, under which the defendants claim.

The record, as brought in evidence, consisted:

1. Of the summons in the case of Maury v. Lacour, in which the defendant is summoned to appear, and answer the complaint, in ten days from the time of serving the writ.

2. Of the return of the sheriff of Tuolumne county, whereby it appears that the summons was served in that county.

3. Of an affidavit and order of publication of the summons, on

the ground that the defendant, Lacour, could not be found in the State.

4. Of a judgment of the Court of the Fourth Judicial District, a copy of which is found in the judgment-roll, which is also entered in the judgment-book, and is as follows:

"No. 1071. *Pierre Maury, Junior,* v. *Louis Lacour.*—This day comes the said plaintiff, by his attorneys, and the said defendant not appearing or answering herein, on application of the plaintiff, the clerk enters the default of the said defendant, and judgment final is entered against the said defendant, Louis Lacour, in favor of the said plaintiff, for the sum of four thousand four hundred and eighteen dollars and forty cents. Whereupon it is ordered and adjudged by the Court now here, that the said plaintiff, Pierre Maury, Jr., do have and recover of and from the said defendant, the said sum of four thousand four hundred and eighteen dollars and forty cents, with ten per cent. per annum interest thereon, until paid, and also all costs, taxed at two hundred and forty-nine dollars and forty-two cents. Judgment rendered February 6, A. D. 1852."

By inspecting this record, it will be seen that it is complete, unless possibly the summons, in addition to being served in Tuolumne by the sheriff, was also served by publication in the same county. There is no proof of this on record, and no pretence that there ever existed any record proof of the fact, or that the default was predicated on such service. The contrary clearly appears, by the record, to be the case.

Whether, then, this summons was served by publication in Tuolumne county, or personally in that county, it should have summoned the defendant to appear and answer in forty days. If it was served both by publication and personally in that county, as it commanded the defendant to appear and answer in ten days from its service, the order was void, and the defendant could safely disregard it.

The counsel for the defence did not attempt to controvert the proposition that error in the return-day of mesne process makes the writ absolutely void. This was conceded on the argument both by the counsel and the Court—and the point is established by all the authorities, without (so far as we have been able to find, after a careful examination) a solitary conflicting decision. 5 New Hamp., 229; 3 Stewarts, 331; 9 Johnson, 385; 2 William Blackstone, 845; 13 Pick., 91; Cro., Elizabeth, 467; 3 Fair., 196; 2 Lord Raymond, 722; 2 Johns., 190; 1 Strange, 399; 3 Miss., 286; 10 Missouri, 771.

The Court is particularly referred to the case in 13 Pick., 91, and 10 Missouri, 771, Saunders *v.* Raims.

The Supreme Court of California, in 2 Cal., 193, says:—"It is said that if the summons is worthless, the parties were not properly brought into Court. This proposition might be true in

cases where the writ was radically defective for want of legal sufficiency."

In 2 Cal., 242, this Court holds that if a summons be radically defective in the requirements of the act of 1851, it will not support a judgment by default. The summons in that case issued in Calaveras county, and was served in San Francisco, and required the defendants to appear in thirty days.

It is clear, therefore, that this summons, served as it was in Tuolumne county, whether personally or by publication, or in both ways, was absolutely void, and imposed no obligation on the defendant to appear and answer. It could not support a judgment by default.

The simple questions, then, for this Court to decide, are these:

1. Is a judgment of a Court of general jurisdiction absolutely void when it appears affirmatively on the face of the record itself that the Court had acquired no jurisdiction over the person of the defendant?

2. Can this invalidity be taken advantage of in a collateral proceeding?

A careful examination of all the authorities will show this to be the law:

1. That everything that is consistent with the record, will be intended in support of a judgment of a Court of general jurisdiction.

2. That where the record itself shows affirmatively that the Court had no jurisdiction over the person, the judgment is void, and may be impeached collaterally.

In the case of Maury v. Lacour, now under consideration, the record shows affirmatively—

1st. The summons itself.

2d. The service.

There is, therefore, no possibility of bringing intendment to bear on this question. The record is complete, and every intendment that the summons or the service was different from what there appears, would be an intendment that the record itself was false. It would be to contradict the record instead of to support it.

The two propositions above laid down have been decided to be law in this Court, and this decision is in consonance with all the leading authorities. Parsons vs. Davis, 3 Cal. 421; 10 Peters, 474; 1st Hill, 139; 15 Johnson, 121; 19 Johnson, 39; 19 Johnson, 7.

In 19 Johnson, 40, Spencer, C. J., says: "If a Court of limited jurisdiction issue a process which is illegal, and not merely erroneous; or if a Court, whether of limited jurisdiction or not, undertakes to hold cognizance of a cause without having gained jurisdiction over the person by having him before them in the manner required by law, the proceedings are void."

See, also, 4th Phil. on evidence, 109, *et seq.*; 1 Sm. & Marshall, 354; 7 Sm. & Mar., 85; 2 B. Munroe, 453; 4 Binney, 97; 11 Mass., 507, 513; 17 Mass., 81, 91; 5 Johns., 41; 8 Johns., 90, 197; Kirby's R., 119; 1 Dallas, 267; 1 Conn., 40, 45; 2 Wils., 386; 2 Strange, 993.

In the case in 11 Wendell, 654, Savage, Ch. J., says: "That a judgment is conclusive upon parties and privies, is a proposition not to be denied. But if a Court has acted without jurisdiction, the proceeding is void; and if this appear on the face of the record, the whole is a nullity."

The case in the tenth volume Missouri Reports was precisely, and in all respects, the same as this.

1st. The summons was to appear in four days, when the law allowed six.

2d. The judgment was by default.

3d. There was a sale of land to a third party, under said judgment.

4th. The validity of this title was called in question in an action of ejectment in a collateral proceeding.

The Court, in an elaborate opinion, decided:

1st. That the summons was absolutely void; that it imposed no obligation on the defendant, and gave no jurisdiction to the Court.

2d. That the judgment was null; and that no title passed at a sale by virtue of such judgment.

3d. That the purchaser was bound to see whether the Court had jurisdiction or not.

The counsel for appellants attempts to escape from this decision on the ground that the Court which rendered the void judgment was a Court of limited jurisdiction. We have already shown that the only difference between Courts of limited and general jurisdiction is one of presumptions merely. In both it is essential that they should have jurisdiction over the person to enable them to render a valid judgment. But, in the case of Courts of general jurisdiction, he who alleges the want of jurisdiction must show it from the record; while in the case of Courts of limited jurisdiction, such jurisdiction must itself appear on the record.

The authority chiefly relied upon by the counsel for appellants is the note to the case of Mills v. Duryee, 2d Hare & Wallace's American Leading Cases, and the cases there cited. The language of this note is somewhat confused; but a careful examination of it in connection with the cases cited will show the law to be as above laid down.

1st. That in Courts of general jurisdiction, where nothing to the contrary appears on the record, it will be intended, in support of a judgment, that the Court had jurisdiction over the person.

Whitwell *v.* Barbier.

2d. That where the record shows affirmatively that the Court had no jurisdiction over the person, the judgment is void, and may be impeached collaterally.

The note above alluded to goes no farther than this: that defects in a record of a Court of general jurisdiction will be supplied by intendment in support of the judgment. There is no case which justifies the proposition that intendments will be made where the record is complete and shows affirmatively that the Court had no jurisdiction.

The last case cited on this point is the case in 6 Eng. Arkansas, 519.

This case will be found on examination to decide directly no more than this:

1st. That the Probate Court of Arkansas is a Court of general jurisdiction.

2d. That although the record of that Court failed to show affirmative notice to the person, still that notice must be presumed.

In its reasoning, the Court goes somewhat further. It says: "Nor does the service of process of summons upon the defendant, or the determination of the Court, that it has been properly served, confer any new power upon the Court. If so, the Court would have power conferred upon it by its own officers, and by itself, which would be absurd."

If this be sound law, which it clearly is not, it could not be applicable to the Courts of California. It is in direct contradiction to the case of Parsons *v.* Davis, 3 Cal., above cited. And the statute of California prescribes that a Court shall only have jurisdiction over the case, from and after the service of the summons.

So that, by the law of this State, there must be a valid service of a summons, before the Court can have any jurisdiction whatever. A void service would of course be equivalent to no service.

It is also in contradiction with the Constitution of California, which provides that no man shall be stripped of property without due process of law.

The second point urged by counsel is as follows:

There was service in fact of the summons, and although the time to answer, as mentioned in the summons, was not such as the statute required, if served out of San Francisco county, it was sufficient for jurisdictional purposes. The Court had jurisdiction over the subject matter. It had a right to judge of the sufficiency of the notice to defendant. If an erroneous decision was made, it was only reversable in error.

In support of this, the case above commented on, from 6 Ark., 517, is cited.

To the first branch of this point we answer that we have al-

ready shown that the service of a summons on Lacour, to appear and answer in ten days in Tuolumne county was void; that he was never brought into Court, and that the Court acquired no jurisdiction. This was conceded by this Court on the argument, and the cases above cited leave no doubt on the subject.

The second branch of this point is: That the Court is the judge of its own jurisdiction, and having given judgment against the defendant, must be presumed to have judged that a notice to Lacour to appear and answer in ten days, from Tuolumne county, was sufficient.

If this were law, it would amount to an entire repeal of the statute prescribing what notice defendants should have. The statute is peremptory on the subject, that in such cases the summons shall summon the defendant to appear and answer in forty days; and it would be a strange doctrine that a Court has a right to decide that a shorter notice is sufficient.

The principle that a Court has a right to judge of its own jurisdiction is a sound one; but it has been strangely misapplied by the counsel in this case.

The true limitation of this principle is this: " That where the jurisdiction of a Court depends upon a fact which such Court is required to ascertain and settle by its decision, such decision will conclude."

In 4 Phillips on Evidence, 213, the doctrine is fully considered.

It is evident that the statute, in determining what shall be a valid summons, has left no judicial discretion on the matter to the Court, nothing to be tried either as a question of law or fact. The summons must command the defendant to appear in forty days from the service, if served out of the county and district, and, until this is done, the Court has no jurisdiction to try any question whatever, unless personal service is waived.

The sixth and last point urged by the counsel for the appellant, is as follows:

" The defendants, in the Court below, having read in evidence a judgment of a Court of competent and general jurisdiction, the Court could not go behind it to inquire into the validity or regularity of the previous proceeding.

"All that a purchaser, claiming under the execution sale, is bound to show, is a judgment, levy, and sheriff's sale."

By the transcript in this case, it appears that what the defendant claims to be the record of the judgment, behind which it is impossible to go, is simply the entry made by the clerk, in the judgment-book, of the relief granted. This book is kept in accordance with § 201 of the Practice Act.

§ 203 of the Practice Act is as follows: "Immediately after entering the judgment, the clerk shall attach together and file the following papers, which shall constitute the judgment-roll :

" 1. In case the complaint be not answered by the defend-

Whitwell *v.* Barbier.

ant, the summons, with the affidavit and proof of service, and the complaint, with a memorandum endorsed on the complaint, that the default of the defendant in not answering was entered, and a copy of the judgment."

That the judgment-roll is itself the proper evidence of the judgment, and not the judgment-book, has probably never before been disputed in a Court of law.

The province of the judgment-book is simply to specify what relief is given by the Court.

The subject matter of the judgment—the appearance or non-appearance of the parties—the questions decided by the Court—do not appear therein. It is in no sense a record If it were brought forward as a record, to contradict a plea of *nul tiel record*, it would be inadmissible. 2 Phillips on Evidence, 134. See, also, Burrill's Law Dictionary, title Judgment, Records, and Rolls.

In the very cases cited by counsel for appellants, it is evident that the judgment-roll was used as the evidence to establish the judgment. Thus, in the case in 17 Wendell, 483, the plea was, "*nul tiel record.*" To contradict this plea, the judgment-roll was evidently produced; since it could not have been apparent, from the judgment-book, whether there was or was not a complaint filed; and the case states that there was no complaint on record.

We have thus shown :

1. That error in the return-day of mesne process vitiates the writ; and that, by such a writ, a party is not brought into Court, nor does the Court acquire jurisdiction.

2. That, though the jurisdiction of Courts of general jurisdiction will be presumed, where nothing appears to the contrary on the record—where the contrary does appear on the record, the judgment is void and insufficient to serve as a muniment ef title.

3. That this invalidity may be taken advantage of in a collateral proceeding, when the record itself discloses it.

MURRAY, C. J., delivered the opinion of the Court—TERRY, J., concurring.

There can be no controversy upon the proposition that a personal judgment of a Court of general jurisdiction is invalid for the purpose of acquiring any rights under it, when it appears affirmatively on the face of the record, that the Court had acquired no jurisdiction over the person of the defendant.

There is, however, a very decided distinction between want of jurisdiction and irregularity in procuring jurisdiction. In the latter case some of the authorities speak of it as a want of jurisdiction, but when so employed it is a loose and improper use of the term.

In the one case the judgment can be attacked in any form, that is directly or collaterally, in the other only by a direct proceeding against the judgment in the Court which rendered it, or in an appellate Court upon an appeal from the judgment. The true test in such cases is, whether the omission complained of is of the substance of the act required to be performed. If of the substance, then the judgment is a nullity; if of form, only an irregularity.

In the case before us the judgment is attacked collaterally, upon the ground that the defendant, although served with process, was not given the time allowed by statute to appear and answer. This would have been good reason in the Court below to have quashed the writ upon motion by *amicus curiæ;* or for extension of time to appear and answer on motion of defendant, it would have been a good objection on error, arrest of judgment, or motion for new trial; but the defendant having been summoned to appear on a day certain, it cannot be said that the Court had no jurisdiction of the person, so as to make its judgment a nullity.

The cases cited to show that irregular process will not support a judgment, are, with one exception, cases where the judgment was directly acted upon. The excepted case is that of Saunders *v.* Raims, 10 Missouri. The judgment in that case, which was collaterally impeached, was rendered by a Justice of the Peace, a Court of inferior, limited, and special jurisdiction, and in favor of whose jurisdiction nothing can be implied, but everything necessary to confer jurisdiction must be affirmatively shown.

In all inferior Courts of the like kind, the law requires that they must strictly follow the rules which create and govern them, and that which in a Court of general jurisdiction would be a mere irregularity, absolutely deprives the former of all jurisdiction.

The case of Parsons *v.* Davis, 3 Cal. R., 421, was a different case from this, in the respect that the judgment which was there determined to be invalid, was rendered without any service whatever upon the judgment-debtor. In such cases, where the party not only has no opportunity to answer, but is certainly ignorant of any proceeding against him, so as to avail himself of the many remedies which the law gives him, until probably he has lost them all, it would not be permitted that the judgment so obtained should be made available for any purpose.

Judgment reversed.