JOHN A. PECK *v.* LEVI STRAUSS AND HENRY L. DAVIS.

Sevice of Summons.—The service of a summons by a person not a Sheriff, as provided by the Practice Act, is a service "according to the course of the common law."

Return of Service of Summons.—A recital in a judgment by default that the default of the defendant was duly entered, cures a technical defect in the return of service.

Idem.—If a summons is served by a person other than a Sheriff, and in his affi-

davit of service he states that he is twenty-one years of age, but fails to state that he was twenty-one years of age at the date of service, it is a mere irregularity, and a judgment by default rendered in the case cannot be attacked collaterally.

WHAT CONSTITUTES SERVICE OF SUMMONS.—If a copy of a summons and a certified copy of a complaint are personally delivered to a defendant, and issued from a Court of general jurisdiction, the Court thereby acquires jurisdiction of the person of the defendant. An irregularity in the mode of delivery is merely a ground of application to the Court to set aside the summons.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

On the 8th day of March, 1862, the plaintiff commenced an action in the District Court of the Fourth Judicial District against the defendant Strauss and Richard W. Davis, on a promissory note and to foreclose a mortgage given to secure the note. The service of summons was made by Alexander Boyd, who made his return by affidavit, as stated in the opinion of the Court. Judgment was obtained by default; the property was sold by the Sheriff, and purchased by one Peck, who afterwards conveyed to the plaintiff. Plaintiff afterwards obtained said Davis' deed of his interest in the property, and was in possession of the same. Defendant Strauss afterwards obtained a judgment against said Davis, and procured the other defendant, Henry L. Davis, who was Sheriff, to advertise his interest in the property for sale on execution. Defendant Strauss also claimed an interest in the property adverse to the plaintiff, under a claim that the Court did not acquire jurisdiction of his person in the foreclosure suit.

The plaintiff commenced this action to enjoin the sale on the execution, and to obtain a judgment that defendant Strauss had no title or interest in the property. The defendant Strauss alone answered. The plaintiff obtained a judgment in the Court below, and the defendant Strauss appealed.

The other facts are stated in the opinion of the Court.

*G. F. & W. H. Sharp*, for Appellant.

We contend that to have given the Court jurisdiction the

affidavit of service should have stated that the affiant was on the day the service was made a white male citizen of the United States, over twenty-one years of age *at that time,* and competent then to be a witness.

A summons is process. (1 Paine, 368; 6 Binney, 184; 3 Chitty Pr. 140; Bouvier's Law Dic., title—Process.)

At common law, no person but a public officer can serve process. "The service of writs in general is required to be made by a known public officer; and it is no unwarrantable inference that the protection and security of the citizen are involved in the prevention of any unnecessary departure from this principle. * * * The direction of a writ to an indifferent person is an *exception* from the general rule; and all exceptions from the common principle are to receive a strict construction." (*Case* v. *Humphrey,* 6 Conn. 139.) "The jurisdiction of a Court, if it extend to the parties and subject matter, when legally before them, can never be called into exercise unless through the medium of a process, complete in law, and *duly served.*" (*Case* v. *Humphrey, supra;* 1 Pike, 386; 24 Texas, 362; *Dolbear* v. *Hancock,* 19 Vermont, 389; 10 Vermont, 547; 11 Vermont, 106.)

An officer's return on process of every kind should state that he has performed what the mandatory part of the process required of him. It should contain a statement of the acts which he has done under and by virtue of it, and the place and the time when and where they were done. His office is simply ministerial. Hence it is insufficient for him to return that he has duly or legally served the process committed to him. He should set forth *what he did,* and when and where, and leave the question of the legality of his proceedings to some judicial tribunal. (*Sheldon* v. *Comstock,* 3 R. I. 85.)

This being the rule as to a public officer, it is not far-fetched to require a private individual, who undertakes to serve process, to show affirmatively that he was legally competent *at the time* he assumed to act. When a statute makes innovations on the common law rules of evidence, its

positive requirements must be strictly complied with. (See *Fleming* v. *Holbrook*, 7 Barb., S. C., 275 ; *Richardson* v. *Gere*, 21 Wend. 156 ; *People* v. *Hadden*, 3 Denio, 220 ; *Bell* v. *Morrison*, 1 Peters, 355.) The common law proof of service of process was the return of a public sworn officer, who gave bonds for the faithful discharge of his duties. The innovation of modern times is an *ex parte* affidavit, styled in section thirty-three of the Practice Act " Proof of the service of the summons."

At the time of service the qualifications must exist; otherwise, between the date of service and the time of making the affidavit thereof, the person serving might have become qualified; the foreigner might be naturalized; an interested party might serve, and part with his interest before making the affidavit; the insane might recover his reason; the *party* to the action might have made the service, say on the 17th day of May, 1861, and made his affidavit of service after the passage of the statute making parties competent to testify (Laws of 1861, p. 521); or the husband, when his wife was sole plaintiff, might have served the summons prior to the Act of April 27th, 1863, and made affidavit subsequently. In none of these instances would the service have been good at the time it was made, and in none of them would a defendant thus served have been required to take notice of an action thus commenced. (Practice Act, 35; 32 Barb. 277; 10 Vermont, 547; 6 Conn. 139; 1 Pike, 386.)

*Doyle & Barber,* for Respondent.

When the record of a Court of general jurisdiction, proceeding in the exercise of its ordinary powers, does not show affirmatively that it had not jurisdiction of the person of the defendant, or the subject matter of the suit, it will be deemed, whenever attacked collaterally, to have had the jurisdiction which it asserts. A party assailing such record by any collateral proceeding is bound to show on the face of the record

itself facts which disprove the existence of the asserted juris-
diction. (*Carpentier* v. *Oakland,* 30 Cal. 440; *Foot* v. *Stevens,*
17 Wend. 483; *Hart* v. *Seixas,* 21 Wend. 40; and *Dorente* v.
*Sullivan,* 7 Cal. 279.) Where a process, or any paper pur-
porting to be process, issued from a Court of general juris-
diction, and bearing on its face the usual credentials of
judicial authority, is personally delivered to a party named
therein as defendant, the Court thereby acquires jurisdiction
of the person of such party. No irregularity in the process
or in the mode of service touches the question of such juris-
diction, but is merely a ground of application to the Court
to set aside the proceeding, and thus renounce a jurisdiction
irregularly acquired. The irregular service even of irregular
process is not *ipso facto* null, but is valid until· set aside by
judicial authority. (*Myers* v. *Overton,* 2 Abbott, 344; *Hunter*
v. *Lester,* 18 How. Pr. 337.) In connection with these two
cases, see section one hundred and thirty-three of New York
code, prohibiting service by a party to the action. (*Bromley*
v. *Smith,* 2 Hill, 518; *Jones* v. *U. S. Slate Co.,* 16 How. Pr.
133; *Potter* v. *Whittaker,* 27 How. Pr. 10.) 5 Harrison Dig.
5,482–3, citing various cases, one of which holds that " It is
an irregularity merely if a plaintiff proceeds to judgment
and execution without any service of the writ of summons,
and therefore an application to set aside the proceedings
must be made within a reasonable time after the defendant
has notice of them. (*Holmes* v. *Russell,* 9 Dowl. P. C. 487.)
Even, then, if the record in *Peck* v. *Davis* showed that Alex-
ander Boyd was not twenty-one years of age, nor a white
male citizen at the time he personally delivered the summons
to Strauss, it would merely show a jurisdiction irregularly
acquired—a proceeding voidable by seasonable objection,
but not void, and is validated by silent acquiescence.

" The course taken to obtain jurisdiction of the person "
in this case was not contrary to the course of the common
law, but in accordance with it—namely, by actual personal
notice and delivery of a copy of the writ. Our Practice Act
has, except in the case of absent or nonresident defendants,

adopted the common law mode of service, and it was pursued in the present case.

By the Court, SHAFTER, J.:

The question presented is whether the Court acquired jurisdiction over Strauss and Davis, defendants in a foreclosure suit brought against them by the plaintiff, in the District Court of the Fourth Judicial District, March 8th, 1862. The question arises upon an attempt to impeach the judgment in that suit collaterally.

The Clerk's entry of default in the suit states " that the defendants having been regularly served with process, and having failed to appear and answer the plaintiff's complaint on file herein, the legal delay for answering having expired, the default of said defendants in the premises is hereby entered according to law." The judgment recites that the " cause having been brought on to be heard upon the complaint therein taken as confessed, the default of the defendants for not appearing or answering having been duly entered, now," etc. The proof of service found in the judgment roll and forming part of it, was the affidavit of Alexander Boyd, dated March 1st, 1862. The affidavit shows a personal service by the affiant on Davis, March 10th, 1862, in the City and County of San Francisco, and on Strauss on the 19th of the same month at the same place, where both said parties resided. The affiant also swears that " he is a white male citizen of the United States of America, of the age of twenty-one years and upward, and competent to be a witness on the trial of the above entitled action." The only point of objection to the proof of service is that the affidavit fails to show that the affiant was adult and a citizen at the date of the services respectively.

It is apparent from the above statement that the service in the action was not contrary to but " according to the course of the common law," if that phrase can be considered of any value for the purposes of definition. The defendants

were domiciled in California, and the service on each was both intra-territorial and personal. The case is therefore broadly within the rule that the jurisdiction of superior Courts, in the matter of judgments rendered by them, will be presumed unless the contrary affirmatively appears upon the face of the record. The fact that the service in *Peck* v. *Strauss et al.* was not by the Sheriff, but by an indifferent person, does not establish that the service was contrary to the course of the common law in the just meaning of that phrase; nor does the fact that the service was proved by an affidavit instead of an official certificate. A statute method of doing a thing may differ from the common law method of doing the same thing, in matters of circumstance, and still be like it in substance. If the mode of the statute is fairly within the analogy of the common law mode, then it is " according to the course " of the latter. That is to say, if there be a general resemblance on points of essential quality, circumstantial diversity will not hurt. The code has made numerous changes in the rules of pleading, evidence and practice, as they existed at common law; still these altera- tions have been so far conceived in the common law spirit and fashioned on the common law models, that neither bench nor bar hesitate to speak of our superior Courts as proceeding according to the course of the common law. Still, if the question of correspondence is to be determined by any other test than the one suggested, it must be apparent that this general opinion is a mistaken one altogether.

The affidavit of Boyd, so far as it goes, bears out the intendment that everything was rightly acted; and wherein it comes short the omission is more than compensated by the recital in the judgment that " the default of the defendants was duly entered." (*Alderson* v. *Bell*, 9 Cal. 315.) A com- plaint was regularly filed against the defendants, and sum- mons was regularly issued thereon; the defendants were fully advised of the complaint and its contents by certified copies placed in their hands. They were also advised by like copies of the summons that process had been issued

against them, warning them to appear and answer, or that they would be defaulted by a day named. They knew, in short, that they were pursued—where, how, by whom, and for what; and they knew further that the white man who served them might turn out to be a citizen twenty-one years old. They were thus fairly put upon inquiry as to Boyd's capacity to serve the papers on them. They knew that in due course he would make and file an affidavit which ought to speak fully to the question. They knew if the affidavit should come short of showing that the affiant had all the points of competency named in the Act, that they, or either of them, could move to quash; and they knew that also in that event the return would be open to amendment. We consider that the service of the certified copies named gave the Court jurisdiction *in personam* to try and determine every description of question, whether dilatory or in chief, that could by possibility arise in the action. The defendants might have appeared and made the motion suggested, and if the decision had been adverse it might have been reviewed in the action on appeal. By standing aloof the defendants both invited and compelled the judgment which they now undertake to assail. The distinction between a want of jurisdiction and an irregularity in procuring it was asserted in *Whitwell* v. *Barbier*, 7 Cal. 63. In that case judgment had been taken by default. The process required the defendant to answer in an interval less than that to which he was by law entitled. It was considered that the slip was but an irregularity to be availed of by motion to quash or to be presently corrected by a grant of further time to answer, or to be made the basis of a motion in arrest, or for a new trial, or of proceedings in error. The irregularity in that case lay in the summons. In *Dorente* v. *Sullivan*, 7 Cal. 279, the defect was in the affidavit of service, and was identical with the defect in the affidavit of Boyd, only that the affiant there failed to state any of the facts of competency named in the statute. It was held to be but a mere irregularity, and that the judgment could not be attacked collaterally on the

ground of it. A return will give jurisdiction, even though it be false (*Putnam* v. *Mann*, 3 Wend. 204); for the power and duty of the Courts to proceed is put, not upon the truth, but upon the apparent truth of the return; and were it otherwise they could never proceed at all.

The point made by the appellant that these doctrines have no application where service is evidenced by an affidavit is not well taken. Whether the proof of personal service is by affidavit or by Sheriff's certificate, the next step in the proceedings, if there be no appearance, is the entry of a default. The decision in *Spaulding* v. *Spaulding*, 7 How. Pr. 297, is not opposed to this view. The counter affidavit in that case was offered and rejected in the proceeding in which the judgment was rendered.

Judgment affirmed.

Neither Mr. Justice RHODES nor Mr. Justice SANDERSON expressed an opinion.