## NATHANIEL S. HIGGINS

### *v.*

## MARY CURTISS *et al.*

1. TRUSTEE—*can not purchase at his own sale.* If a trustee in a deed of trust, in disregard of his duty, becomes the purchaser of the property, through another, at his own sale, the *cestui que trust* may, within a reasonable time after discovering the fraud, repudiate the sale and have the same

set aside; and, if he has disposed of it to innocent purchasers, and thus placed it beyond his power to reconvey, he may be required to account for its value.

2.   PLEADING—*admission from pleadings in chancery.*   Where a bill in chancery charged that the defendant, as trustee, having become the owner of the debt secured, became the purchaser at his own sale, through a relative, and the answer, after denying any collusion, generally, between the defendant and the immediate purchaser at the sale, admitted that such purchaser, soon after the sale, conveyed the property to the defendant, and did not set forth that the purchaser actually paid for the property at, or subsequently to, the sale, or that defendant paid him anything for the conveyance: *Held*, that the answer was a virtual admission that the defendant was, in fact, a purchaser at his own sale.

3.   CREDITOR'S BILL—*judgment may be attacked for fraud.*   On creditor's bill to enforce payment of a judgment of the county court allowing a claim against an estate, the administratrix, who is sole devisee, may show that the judgment is fraudulent and inequitable, if she was ignorant of the facts when the claim was allowed.   She may contest the judgment the same as an heir on application to sell real estate.

4.   JUDGMENT—*equity will set it aside when fraudulent and there is no laches.*   Where a claim is allowed against an estate, which is, in fact, paid, but of which fact the administrator is ignorant at the time, he may, on discovering the facts, have the same set aside, in equity.

5.   CROSS-BILL—*right of defendant to file.*   On bill by a creditor whose claim is allowed against an estate, to subject certain lands alleged to have been fraudulently conveyed, to its payment, the widow of the deceased, who is administratrix and sole legatee, being a necessary party to the bill and having an interest, has the right to file a cross-bill, to have the judgment allowing the claim set aside as fraudulent.

6.   AMENDMENT—*of answer to cross-bill, discretionary.*   It is a matter of discretion with the court, whether it will allow an amendment of an answer to a cross-bill; and there is no error in refusing it, where no excuse is shown for not putting its matter in the original, and its truth is not shown by affidavit or deposition.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Mr. ARTHUR W. WINDETT, for the appellant.

Mr. JAMES K. EDSALL, and Mr. WILLIAM LATHROP, for the appellees.

Mr. Justice Scholfield delivered the opinion of the Court:

Bill was filed by the appellant, Nathaniel S. Higgins, who claimed to have a judgment rendered in his favor by the county court of Champaign county, against the estate of James Curtiss, deceased, for $5421.25, and other creditors of said Curtiss, to subject lands, alleged to have been conveyed in fraud of their rights, to the payment of their claims. All, except Higgins, have released their claims in favor of the appellee Mary Curtiss, and it will therefore be necessary to allude only to the case as it affects Higgins. Numerous amendments were made, from time to time, to the bill, answers, cross-bill, etc., and, in this way, the facts have been unnecessarily complicated. We find it necessary, however, but to allude to the substance of the issues as presented on the final hearing, without regard to the order of time when they appear in the record.

The substance of the defense set up by Mary Curtiss to the relief sought by Higgins is this: On and prior to April 14, 1859, she was the owner, in her own right, as of her sole and separate property, of certain city lots in the city of Chicago, which had been conveyed to, and were held by, one Brown, in trust for her; that on that day her husband, James Curtiss, made his promissory note, payable to Phineas Mayhew, for $5000, payable in one year, with interest at ten per cent; that at the same time she, her husband and her trustee united in making a deed of trust to appellant, Higgins, on her property, to secure the payment of the note; that Higgins became the owner of the note, before maturity, and, shortly after its maturity, pretended to sell the property pursuant to the terms of the deed, to Mayhew, for the nominal sum of $1000, although it was, in fact, then worth $8500; that Mayhew purchased for Higgins, and that the pretended sale was, in fact, by Higgins to himself; that Mayhew, shortly afterwards, conveyed to Higgins, and Higgins has since sold and conveyed the property to Lester H. Robinson, who was a purchaser in good faith without notice, for $6000, or $6300; that the notice given of the pretended sale was insufficient in point of time, and only pub-

lished in a local campaign newspaper published in Chicago, of limited circulation; that Mayhew and Higgins are brothers-in-law, and they acted in conjunction to defraud the estate of Curtiss, and appellee in particular; that Higgins only credited on the note, as the proceeds of the sale, $394; that appellee Mary Curtiss resided in Champaign county. and had no notice, in fact, of the pretended sale by Higgins at the time he presented his claim against the estate of Curtiss in the county court of Champaign county, and she did not learn that the sale was made to Higgins himself until since she filed her first answer to his bill in the present case. She alleges that she was ignorant and unacquainted with business matters, and that, by reason of her poverty and that of the estate of James Curtiss, she was unable to bear the expenses incident to looking after the matters connected with the trust deed. From all which, it is insisted, the judgment in favor of Higgins is fraudulent and its payment should not be enforced.

Substantially the same facts are set up by the appellee Mary Curtiss, in a cross-bill filed by her against Higgins. In that she prays that Higgins' judgment be declared void, and set aside; that he be decreed to have taken and held the title to the property obtained by him through Mayhew, in trust for her; and that, after deducting the amount due as secured by the deed of trust executed to him by herself, her husband and trustee, he be required to account to her for the residue of the value of the property, etc.

The court, on hearing, dismissed the original and amended bills of Higgins, and decreed that the judgment obtained by Higgins in the county court against the estate of James Curtiss was fraudulent and that the same be set aside, and that he was indebted to appellee Mary Curtiss, by reason of his conduct as trustee, in the sum of $1606.45, with six per cent interest from December 31, 1861, with annual rests to September 21, 1874, amounting, in all, to $3372.43.

The objection that the record fails to show the decree was entered or made by the court, judicially, etc., is obviated by the amended record.

The second and third objections are, that the court erred in dismissing the original and amended bills, and in setting aside the judgment in favor of Higgins, against the estate of Curtiss, and they will be considered together.

While Higgins, in his answer to appellees' cross-bill, denies that there was any collusion between himself and Mayhew in regard to the property sold at the trustee's sale, he admits that Mayhew conveyed the lots to him after the sale, and he does not claim either that Mayhew actually paid for the lots at or subsequent to the sale, or that he paid Mayhew anything for them. He admits that he was, himself, the owner of the note at the time of the sale, and says that he credited the amount of the sale, less the costs thereof and amount paid for taxes and other liens as provided in the trust deed, on the note.

This we can but consider a virtual admission that he was, in fact, a purchaser at his own sale. The general denial of collusion is rebutted by the facts conceded. If the purchase by himself from Mayhew was in good faith, he should have alleged, distinctly and positively, facts from which the court could clearly see that it was in good faith.

Were the statements of this answer matter of proof as to the *bona fide* character of the sale to Mayhew, and by Mayhew, no court could for a moment hesitate to hold that the transaction was colorable merely, and voidable.

The evidence is clear, that when the note was presented to Mary Curtiss, as administratrix, for allowance in the county court, she was ignorant of the fact of the sale; and, as Higgins' attorney, who presented the claim, says, did not appear to comprehend the transaction; and there is no pretense that she was informed of Higgins' interest in the sale, until long since the commencement of the present suit.

We regard the evidence as sufficiently explaining her conduct, and relieving her from the charge of *laches* in defending in the county court against the claim; and from taking steps to disaffirm the course pursued by Higgins as trustee.

The trustee, having become the owner of the indebtedness secured by the deed making him trustee, and having, in viola-

tion of his duty, and in fraud of his *cestui que trust*, taken title to the property himself, through pretense of his own sale, and subsequently conveyed it for a valuable consideration to an innocent purchaser, was in no condition to insist that he should be paid from the estate of Curtiss the balance he pretended was due on the indebtedness.

There is much proof tending to show actual fraud in the sale; but, aside from this, public policy forbids that a trustee shall purchase at, or be personally interested in, a sale to be made by himself in the performance of his duties as trustee. When, in disregard of his duty, he becomes a purchaser of property at his own sale, the *cestui que trust* may, within a reasonable time, repudiate and disaffirm the sale, and have a conveyance of the property; or, if he has disposed of it to innocent purchasers, and thus placed it beyond his power to convey it to the *cestui que trust*, he may be required to account for its value. These principles are well settled and familiar, and need no citation of authorities to vindicate their correctness.

By the will of James Curtiss, appellee Mary Curtiss was his sole legatee. Any judgment, therefore, in favor of Higgins, in the county court, against the estate, if satisfied, must be satisfied by the payment of money which would otherwise belong to her, for the property was hers, though charged with the payment of the debts. Where the proceeding is by the administrator, to obtain a decree to sell lands for the payment of debts, it has been repeatedly held, the heir may appear and contest, notwithstanding the claims for which payment is sought have been adjudged against the administrator by the county court, and we are of opinion the same principle is applicable here. *Stone et al.* v. *Wood*, 16 Ill. 177; *Hopkins* v. *McCann*, 19 id. 113; *Moline Water Power and Manufacturing Co.* v. *Webster*, 26 id. 233.

If the right to contest be established, it is clear the defense to the original bill was complete. Appellee had the right to have the note treated as paid by his conversion of the trust property, and having elected to do so, he had no claim to enforce.

3—82d Ill.

But even if we are incorrect in assuming that, occupying the position she does in this suit, a judgment of the county court would, ordinarily, be conclusive against her, we think this judgment could not be so regarded, because it was fraudulent, and obtained by reason of the ignorance of the administratrix of the defense which existed against it.

It was not equitable that the trustee, having converted the trust property, should enforce payment of the debt to himself, which it was given to secure. This would have been a good defense to the claim presented in the county court, and it was not through the fault of Mary Curtiss that knowledge of it was withheld from her.

The objection that Mary Curtiss having been made defendant to the original bill as administratrix, and having subsequently ceased to be administratrix, she could not, afterwards, have relief on a cross-bill filed by her individually, has no support in the record. The record shows she was made a party and summoned as an individual simply.

Mary Curtiss was a necessary party to the original suit, and she had an equity arising out of the claim there attempted to be enforced, and had a right to file a cross-bill to enforce it. *Jones* v. *Smith*, 14 Ill. 229.

The objections to the ruling, on account of the introduction of evidence, are unimportant. They do not at all affect the question whether Higgins was a purchaser at his own sale, and it is upon this ground solely that we have placed our condemnation of it.

Appellant waived his demurrer to the cross-bill by answering, and it is now too late to consider whether the court erred in overruling it.

It was discretionary with the court to allow or refuse the offered amendment to the answer to the cross-bill, and since no excuse was offered for not having put the matter of it in the answer filed, and its truthfulness was not shown by affidavit or deposition, there was no abuse of discretion in refusing it.

The decree is affirmed.

*Decree affirmed.*