NELS O. HULTBERG et al. Defendants in Error, vs. PETER
    H. ANDERSON et al. Plaintiffs in Error.

*Opinion filed December 21, 1911—Rehearing denied Feb. 7, 1912.*

1. CONSTITUTIONAL LAW—*a party is not only entitled to notice
but also to a hearing.*  Under the due process of law provision of
the constitution a party is not only entitled to notice of a proceed-
ing against him but is also entitled to be heard in his defense.

2. JUDGMENTS AND DECREES—*when judgment is merely the ar-
bitrary edict of the judge.*  A judgment pronounced without any
judicial determination of the facts which alone can support such
a judgment is merely the arbitrary edict of the judge, and is as
much wanting in due process of law as though the party against
whom it was rendered had not been served with legal process.

3. SAME—*what is not a denial of due process of law.*  The
fact that the Supreme Court, in affirming a decree entering judg-
ment on an arbitrator's award and dismissing cross-bills to impeach
the award, disposed of the contentions against the validity of the
award upon the ground that they presented questions upon which
the parties were foreclosed by their agreement to arbitrate, does
not amount to a denial of a hearing upon such matters, such as
would render the original decree void under the due process of
law provision of the constitution.

4. EQUITY—*when cross-bill cannot be sustained as a bill of re-
view for newly discovered evidence.*  A cross-bill in a creditor's
bill proceeding cannot be sustained as a bill of review for newly
discovered evidence where the cross-bill is not sworn to, and there
is no affidavit filed with the bill, or any other showing made, that
the cross-complainants have any new evidence to present, the only
claim being that the matter of accounting was not fully gone into
in the original suit.

5. SAME—*when bill of review for error apparent on face of
record cannot be maintained.*  A cross-bill in a creditor's bill pro-
ceeding cannot be sustained as a bill of review for errors apparent
on the face of the record of the original proceeding, where such
record has already been reviewed and the decree affirmed by an
appellate tribunal.

6. SAME—*when court will not inquire whether former decree
was just and equitable.*  Where a bill is filed to carry into execu-
tion a former decree which is incomplete or defective to such an
extent that it cannot be executed without a further decree curing
the defect and making it complete, the court will inquire whether

the former decree is just and equitable; but this rule has no application to decrees that are complete and free from any inherent defect which prevents their execution.

7. SAME—*court will not open issues upon filing a creditor's bill to remove fraudulent conveyances.* Upon the filing of a creditor's bill to set aside an alleged fraudulent conveyance and subject the property to the payment of a decree which is complete and final, the court will not open up the issues which were tried in the original proceeding and re-try them.

HAND and CARTWRIGHT, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

CHYTRAUS, HEALY & FROST, for plaintiffs in error.

WINSTON, PAYNE, STRAWN & SHAW, and HARRIS F. WILLIAMS, (N. SODERBERG, of counsel,) for defendants in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On July 1, 1904, Nels O. Hultberg and the Swedish Evangelical Mission Covenant of America (hereinafter called the Covenant for convenience) filed their joint creditor's bill in the circuit court of Cook county against Peter H. Anderson, his wife, Frideborg A. Anderson, Claes W. Johnson, Adolph Bernard, the White Star Mining Company, the Chamber of Commerce Safety Vault Company, the State Bank of Chicago, the Brazilian Diamond, Gold and Developing Company and the Chicago Title and Trust Company, for the purpose of reaching certain property which complainants claim should be applied toward the payment of a decree previously entered by the circuit court of Cook county against Peter H. Anderson. The defendants to the bill other than Peter H. Anderson were made parties defendant, for the reason that they had, or were supposed to have, in their possession or control certain property, money or other assets in which the said Ander-

son was alleged to have some title or interest held or controlled by said defendants for said Anderson in trust, resulting from fraudulent conveyances or dispositions made by said Anderson which ought in equity to be set aside and canceled and said property subjected to the payment of complainants' debt. The only relief prayed for in the original bill was the cancellation of certain alleged fraudulent conveyances made by Anderson and for a decree subjecting the property to the payment of the decree against said Anderson. The cause was continued from term to term of the circuit court, during which time numerous unimportant orders were made, until February 18, 1908, when Peter H. Anderson and the mining company filed their answer and obtained an order granting them leave to file a cross-bill, which was filed on February 21, 1908. The answer of Anderson and the mining company and their cross-bill contain substantially the same allegations. Hultberg and the Covenant made a motion to strike the cross-bill from the files, which motion was by the court referred to a master in chancery, who reported recommending that the cross-bill be stricken. This motion was afterwards sustained by the court, and the cross-bill, in which Claes W. Johnson was joined as complainant, was dismissed. To reverse this order striking their cross-bill from the files, the mining company, Anderson and Johnson have sued out the present writ of error.

The suit at bar grows out of a controversy that has been going on between Anderson on the one hand and Hultberg and the Covenant on the other for a number of years. In order to understand the questions that are here involved it will be necessary to state, in a general way, the previous history of the controversy between the parties.

In the summer of 1897 Peter H. Anderson was sent out from Chicago as a missionary by the Covenant to do christian mission work among the natives of Alaska. His mission was located at Chinik, where he arrived to enter

upon his work late in the summer of 1897. In the summer of 1898 prospecting parties sent out from Chinik discovered gold in paying quantities on Anvil creek. Numerous claims were staked out and development work followed. Among other claims that were staked on Anvil creek was No. 9 Above, the legal title to which was conveyed to Anderson in pursuance to previous arrangement made with the party who staked out the claim. No. 9 Above was worked by Anderson and considerable quantities of gold were taken out by him until 1902, when he organized the White Star Mining Company of California, with a capital stock of 500,000 shares, all of which were owned by Anderson except three shares. During the year 1902 No. 9 Above was worked by Johnson under the name of the corporation which Anderson had organized. The net profits of the mine for that year were approximately $80,000. Early in the year 1903 Anderson transferred all of the stock in the White Star Mining Company of California to Claes W. Johnson for a stated consideration of $100,000. In May, 1903, Johnson organized the White Star Mining Company of Illinois, with a capital stock of $25,000, to which last named company he caused the mining claim No. 9 Above to be conveyed by the California company. During the year 1903 the White Star Mining Company of Illinois operated the claim at a net profit of $75,000. After No. 9 Above became known as a valuable property the Covenant set up a claim to the equitable ownership of said claim, basing its right on two grounds: (1) That Anderson having been sent out by the Covenant, it was entitled in equity to any property he might acquire or profits which he might make in connection with his missionary work; (2) that said No. 9 Above was, in fact, staked out and the title thereto taken by Anderson in trust for the Covenant. These claims put forward by the Covenant constitute the foundation of the present as well as of all previous controversies between the parties. In 1903 the

Covenant assigned its claim, both to the mining property and to the proceeds that had been taken therefrom, to Nels O. Hultberg. On August 12, 1903, Hultberg, Johnson, Anderson and the White Star Mining Company of Illinois entered into an arbitration agreement to submit all matters in controversy between them respecting the title to the mining property, and the produce thereof, to the decision of three arbitrators to be selected as provided in said agreement. David F. Lane of California and Abram M. Pence of Chicago were selected by the parties as two of the arbitrators, and they chose Hiram T. Gilbert of Chicago as the third. After hearing the cause, on April 13, 1904, the arbitrators Gilbert and Lane made an award finding that Hultberg was the owner of claim No. 9 Above and entitled to a conveyance thereof and that Anderson had received $232,200 net proceeds from said mine, and ordered him to immediately pay that sum to Hultberg. The award also found that Johnson and the White Star Mining Company of Illinois were indebted to Hultberg in the sum of $26,000, less some small deductions, which they were ordered to pay to him. Johnson and the White Star Mining Company of Illinois paid the amount of the award against them but did not convey the title of the mine to Hultberg. Soon after the making of the award Hultberg filed a bill in the circuit court of Cook county for the purpose of having judgment entered upon the award, as provided in the statute. The White Star Mining Company filed a bill in the superior court of Cook county for the purpose of having the award of the arbitrators set aside and to have the title to the mining property established as against the claim of Hultberg and the Covenant, and for an injunction and other relief. This bill was amended and by agreement of parties transferred to the circuit court, to be heard in connection with the suit of Hultberg to carry the award into execution. Johnson and Anderson filed cross-bills attacking the award on substantially the same

grounds as those upon which the bill of the White Star Mining Company was predicated. Upon a final hearing in open court a decree was entered in the consolidated cause dismissing the original and the amended bill of the White Star Mining Company and the cross-bills of Johnson and Anderson and granting the relief prayed in the bill of Hultberg. The decree found that Peter H. Anderson was indebted to Hultberg in the sum of $232,200, with interest at the rate of five per cent from the date of the award, and ordered him to forthwith pay the same, and in default directed that execution should issue upon said decree. There was also a decree against the White Star Mining Company and Johnson in accordance with the award of the arbitrators. From this decree the White Star Mining Company prosecuted an appeal to this court and errors were assigned by both Anderson and Johnson. Upon a consideration of said appeal by this court the decree of the circuit court was in all respects affirmed. See *White Star Mining Co.* v. *Hultberg,* 220 Ill. 578, where all of the facts in connection with this entire controversy as the same appeared in the record then before this court are stated with great particularity and detail. By reference to page 595 of the majority opinion in that case it will be seen that the grounds upon which the award of the arbitrators was attacked are stated as follows:

"(1) The submission agreement was special, and the arbitrators were bound to decide the controversy on legal and competent evidence only, and according to law, which they failed to do; (2) at the date of the submission the claim for the proceeds of the mine prior to June 17, 1905, contended for, was held and controlled by the Covenant, which had not signed and was not a party to the submission, and such claim was not acquired by Hultberg until September 8, 1903, nearly a month after the submission, and the award, including such proceeds, is void; (3) Anderson was deprived of such an accounting as under the

contract and in fairness and justice he was entitled to, and for this reason the award is vitiated; (4) the award is void and should be set aside because the arbitrators made a gross mistake, and were guilty of such misconduct as amounted, in law, to a fraud, in awarding against Anderson the sum of $80,000, being the proceeds of the mine in 1902, when it was the property of the White Star Mining Company of California; (5) the arbitrators made a mistake of law in disregarding the settlement between the Covenant and Anderson and the written release executed by the Covenant to Anderson; (6) the bill to enforce the award is a bill for the specific performance of a contract, and the relief thereunder should not be granted for the reason that the award is inequitable and unjust; (7) there was a mistake made by the arbitrators as to the question of the existence of a trust; that Hultberg is estopped; and the award is in violation of the United States constitution, depriving the parties of their property without due process of law; also that the circuit court erred in disposing of the $6813.75 on deposit with the trust company."

As already indicated, the original bill in the case now before the court is a creditor's bill for the purpose of removing alleged fraudulent conveyances and subjecting certain property to the payment of the decree for $232,200 against Anderson and for no other purpose. The cross-bill filed by Anderson and others is filed for the purpose of having the decree against Anderson set aside and annulled and all further proceedings for the purpose of enforcing said decree perpetually enjoined. The plaintiffs in error base the right to maintain such cross-bill upon the following propositions: (1) The original decree should be impeached and set aside for the reason that in its rendition, under the circumstances stated, the plaintiffs in error were deprived of constitutional rights under both the State and Federal constitutions; (2) the cross-bill is a bill to impeach the original decree for unjustness and inequity, and

as such is germane to the creditor's bill and should for that reason be entertained and heard; (3) the cross-bill is maintainable as a bill of review for newly discovered evidence; (4) it should be entertained as a bill of review for error apparent upon the face of the record. These several propositions will be considered in the order above stated.

*First*—Plaintiffs in error contend that the decree of the circuit court of Cook county is void and may be impeached by a bill in equity because such decree is wanting in due process of law. Much argument is presented by plaintiffs in error intended to establish the proposition that a judgment of a State court may be void and subject to attack for want of due process of law in the proceedings wherein the judgment was rendered. We entertain no doubt whatever of the soundness of this general proposition. The case of *Pennoyer* v. *Neff*, 95 U. S. 714, is a case illustrating the application of this principle. There the State court of Oregon rendered a personal judgment against a defendant upon constructive service made in accordance with a local statute. The validity of this judgment was brought into question in the circuit court of the United States for the district of Oregon, and it was held that a personal judgment rendered by a State court upon a money demand against a non-resident of the State who was served by publication of summons but upon whom no personal service of process within the State was made and who did not appear was wanting in due process of law and that no title passed to property sold under execution upon such judgment. This rule need not be further discussed since it can have no application to the present case for the reason that there was complete jurisdiction over the person of Anderson in the proceeding complained of. Plaintiffs in error do not contend that there was a want of jurisdiction of the person of Anderson in the proceeding wherein he was adjudged to pay $232,200 to Hultberg, but their con-

tention is that there is another class of judgments which may be wanting in due process of law notwithstanding the court rendering such judgment has complete jurisdiction both of the subject matter and of the person of the parties concerned, and that the case at bar belongs to that class. Under the due process clause of the constitution a party is not only entitled to notice of the proceeding against him but he is also entitled to be heard in his defense. Of what avail is it to summon a party into court if after he appears the court arbitrarily refuses to hear him? A judgment pronounced without any judicial determination of the facts which alone can support such judgment is merely the arbitrary edict of the judge, and is as much wanting in due process of law as though the party against whom it is entered had received no legal summons. *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 166 U. S. 226; *Fayerweather* v. *Rich,* 195 id. 276.

Conceding, as we do, the legal premises upon which the first contention of plaintiffs in error rests, we are still unable to see how it is possible to apply it to the situation presented by this record. In the original proceeding now being attacked plaintiffs in error made certain contentions, which we have set out above, as reasons why the award of the arbitrators should be impeached and set aside. Those several contentions were disposed of by this court mainly upon the ground that they presented questions upon which the parties were foreclosed by the agreement to arbitrate. Plaintiffs in error contend that because this court differed from them as to the grounds upon which the award of the arbitrators could be attacked and disposed of their contentions upon the ground that those contentions were settled by the award and arbitration agreeement, they have been deprived of their constitutional rights to have a hearing upon those matters. To this we cannot assent. In the original proceeding the court did not arbitrarily refuse to hear and consider plaintiffs in error's several contentions

but they were all duly considered and disposed of by the court. If the position of plaintiffs in error were sustained and the due process clause of the constitution were held to apply to situations such as we have here, every pleading, whether of plaintiff or defendant, which was erroneously adjudged insufficient, would render any judgment pronounced .in pursuance thereof void and open to attack, collaterally or otherwise. Such a rule would be in a large measure destructive of our judicial system by making such judgments absolutely void when heretofore they have been regarded as voidable, only, and subject to reversal in a direct proceeding for that purpose. Reduced to its last analysis, plaintiffs in error's contention on this point is simply a novel and skillful attempt to obtain a rehearing upon questions that have long since passed out of the jurisdiction of the courts.

*Second*—Plaintiffs in error next contend that the original decree was unjust and inequitable, and that, since defendants in error have found it necessary to come into a court of equity by their creditor's bill, the court should entertain a cross-bill for the purpose of re-examining the basis upon which the original decree rests, and if it be found, upon such reconsideration, that the decree is unjust and inequitable for any reason, a court of equity will withhold its aid and enjoin any further attempt to enforce such decree. Upon this proposition plaintiffs in error submit elaborate arguments and cite a great many authorities, both in this State and elsewhere. While we have examined all of the authorities to which reference is made that were accessible to us, we do not deem it necessary to go beyond a few decisions of this court to determine this question. The rule is established by the decisions of this court and elsewhere, that when a bill is filed to carry into execution a former decree that is incomplete or defective to such an extent that it cannot be executed without a further decree curing the defect and making it complete, the court may,

and will, inquire whether the decree is just and equitable. But this rule has no application to decrees that are complete and perfect and free from any inherent defect which prevents their execution. Thus, in *Wadhams* v. *Gay,* 73 Ill. 415, this court, on page 430, quoted approvingly the following language from 2 Daniells on Chancery Practice, 1614: "It is laid down that although where a decree is capable of being executed by the ordinary process and forms of the court, whatever the iniquity of the decree may be, yet till it is reversed the court is bound to assist it with the utmost process the course of the court will bear. But where the common process of the court will not serve and things come to be in such a state and condition, after a decree made, that it requires an original bill, and a second decree upon that, before the first decree can be executed, if the first decree is unjust, then this court desires to be excused in making it its own act and to build upon such foundation and charging its own conscience with promoting an apparent injustice; and this obliges the court to examine the grounds of the first decree before it makes the same decree again." The doctrine of this case has never been departed from or extended by this court but has been several times re-affirmed. (*Jenkins* v. *International Bank,* 111 Ill. 462; *Pestel* v. *Primm,* 109 id. 353; *Lancaster* v. *Snow,* 184 id. 534.) The decree here sought to be impeached was a complete and perfect decree. It adjudged Anderson to be indebted to Hultberg in the sum of $232,200 and ordered him to pay the same forthwith and awarded execution. Its completeness and finality are shown by the fact that this court entertained an appeal therefrom and affirmed the same. The necessity for filing the creditor's bill does not arise out of any defect in the decree, but out of alleged acts of Anderson in fraudulently transferring his property to hinder and delay his creditors. The creditor's bill is an original proceeding based on the alleged fraudulent conveyances of Anderson. No case has

been cited, and we have been unable to find any, where, upon the filing of a creditor's bill to set aside fraudulent conveyances subjecting property to the payment of a decree or judgment, the court will again open up the issues that were determined in the original proceeding and re-try them. If such were the rule a judgment debtor could always obtain a rehearing by making a conveyance of his property after the judgment, so as to compel the creditor to file a bill in equity to set aside such conveyance. Thus by his own wrongful act the debtor would secure rights to which he would not otherwise be entitled. This question is not only clear upon reason but is well settled by authority. *Newman* v. *Willitts*, 60 Ill. 519; *Mattingly* v. *Nye*, 75 U. S. 370; *Sawyer* v. *Moyer*, 109 Ill. 461.

*Third*—The cross-bill cannot be sustained as a bill of review for newly discovered evidence, since there is no showing, by affidavit or otherwise, that plaintiffs in error have any newly discovered evidence to present. The claim in this record is, that in the matter of accounting for the profits realized from working the mine the evidence was not fully gone into. There is no affidavit filed with the bill and the bill itself is not sworn to. There is no attempt to comply with the law governing bills of review for newly discovered evidence. *Ricker* v. *Pile*, 100 U. S. 104; *Schaefer* v. *Wunderle*, 154 Ill. 577.

*Fourth*—Lastly, plaintiffs in error contend that the cross-bill should be sustained as a bill for review for error apparent upon the face of the decree. A conclusive answer to this contention is, that a bill of review for error apparent upon the face of the record cannot be maintained when the record sought to be reviewed has already been reviewed and the decree affirmed by an appellate tribunal. (*Southard* v. *Russell*, 16 How. 547; *Putnam* v. *Clark*, 35 N. J. Eq. 145; *Kingsbury* v. *Buckner*, 134 U. S. 650; *Schaefer* v. *Wunderle, supra.*) In the *Wunderle case*, on page 583, this court said: "A distinction, however, is

drawn between a bill of review for error apparent upon
the face of the decree and one based on newly discovered
evidence.  The former cannot be filed after the decree has
been passed upon by the appellate tribunal."  The decree
here sought to be attacked, as we have already seen, was
reviewed and affirmed by this court.  *White Star Mining
Co.* v. *Hultberg, supra.*

There was no error in the order of the court striking
the cross-bill from the files, and the decree will be affirmed.

*Decree affirmed.*

HAND and CARTWRIGHT, JJ., dissenting:

We do not agree to the second paragraph of the major-
ity opinion.  Plaintiffs in error have never, as yet, had a
hearing upon the merits of their case.  The original decree
upon which the creditor's bill filed in this case is based was
affirmed in *White Star Mining Co.* v. *Hultberg,* 220 Ill. 578,
upon the sole ground that the submission was a general
one and that the award which followed was binding upon
the parties, and from the averments of the cross-bill filed
in this case we are impressed with the view that it is shown
that the original decree is inequitable and unjust and that
it ought not to be enforced by a court of equity, which
facts were admitted by the motion to strike the cross-bill
from the files.  There are numerous authorities which hold
that when a complainant is forced to go into a court of
equity by original bill and obtain a second decree before the
first decree can be executed, if it is made to appear in the
second suit that the first decree is inequitable and unjust,
the court in which the second bill is filed will examine the
grounds upon which the first decree rests, not for the pur-
pose of annulling and setting aside that decree, but for the
purpose of advising itself as to the justice of the decree be-
fore it makes it its own decree by assisting in its execution.
In *Wadhams* v. *Gay,* 73 Ill. 415, on page 430, it was said:
"There is authority for the doctrine that the court may,

on a bill to carry a decree into execution, look into the case to see if it will make the same decree a second time." In such a case, it is said, "it is competent for the court, in respect of the special application, to examine the decree, and if it be unjust, to refuse enforcement.—Adams' Eq. 416." Daniell, in 2 Daniell's Chancery Practice, 1614, citing *Lawrence* v. *Berney,* 2 Ch. Rep. on this point says: "It is laid down that although where a decree is capable of being executed by the ordinary process and forms of the court, whatever the iniquity of the decree may be, yet till it is reversed the court is bound to assist it with the utmost process the course of the court will bear. But where the common process of the court will not serve and things come to be in such a state and condition, after a decree made, that it requires an original bill, and a second decree upon that, before the first decree can be executed,—if the first decree is unjust,—then this court desires to be excused in making it its own act and to build upon such foundations and charging its own conscience with promoting an apparent injustice; and this obliges the court to examine the grounds of the first decree before it makes the same decree again." And in the earlier case of *O'Connel* v. *McNamara,* 3 Dr. & Warren, 411, Lord Chancellor Sugden thus announced the rule: "I do not understand the rule to be that this court is bound to carry into execution an erroneous decree. On the contrary, I apprehend that when a party comes into this court asking for the benefit of a former decree, he must be prepared to show, if the case requires it, that such decree was right." And in the late case of *Perry* v. *United States School Furniture Co.* 232 Ill. 101, which was a creditor's bill, this court enforced the rule and declined to assist in carrying into execution a judgment at law by reason of the fact that the contract which was the basis of the judgment was in violation of the anti-trust statute and contrary to public policy. On page 109 of the opinion the court said: "There can be no

question that the judgment was a valid and binding judgment against the United States company, and that as against it Loughlin had a right to pursue his remedy at law to secure its payment and satisfaction, but a court of equity will not lend its aid in the enforcement of claims or rights which arise out of contracts that are contrary to the public policy of the State." In *Teel* v. *Dunnihoo,* 230 Ill. 476, it was held, upon an original bill to carry into execution a former decree, the court will look into the original case and see whether the decree is equitable and just before it will decree its enforcement; and there are numerous other cases which have been decided by this court where the doctrine of the foregoing cases has been recognized. (*Higgins* v. *Curtiss,* 82 Ill. 28; *Pestel* v. *Primm,* 109 id. 353; *Lancaster* v. *Snow,* 184 id. 534.) In the last case, on page 537, it was said: "Since the opinion was filed in *Wadhams* v. *Gay,* 73 Ill. 415, the rule has been in this State that where an original bill is filed asking for a decree to carry a former decree into execution, the court may look into the original case and see if the former decree is equitable and just, and if it is not, may refuse to enter a decree to enforce and carry it out."

The foundation of the doctrine announced in the foregoing cases is, that a court of conscience will not lend its assistance to the consummation of a wrong by carrying into effect an inequitable and unjust decree. This is an equitable doctrine and does not apply to the enforcement of judgments at law, although it was applied to a judgment at law in *Perry* v. *United States School Furniture Co. supra,* where a question of public policy was involved. The cases cited in the majority opinion which hold that upon a creditor's bill the court will not inquire into the validity of the judgment which forms the basis of such bill are not in point. We are of the opinion that, if the facts averred in the cross-bill are established by proof, while a court of equity should not enjoin the execution of

the original decree it ought not to enforce that decree, but should leave the defendants in error to enforce said decree as best they may by the ordinary processes of the court.