[Sac. No. 4050. In Bank.—February 1, 1928.]

HARRY J. GRAY, Appellant, v. HARRY W. HALL, County Clerk of the County of Sacramento, etc., Respondent.

Chas. A. Bliss for Appellant.

John R. Connelly, Evan J. Hughes and George A. Work for Respondent.

WASTE, C. J.—This is an appeal from a judgment of the superior court of the county of Sacramento denying appellant's application for a writ of mandate.

The events leading to the institution of this proceeding may be chronologically recorded as follows: Harry J. Gray, the appellant herein, commenced an action in the year 1921 against one P. L. Yarbrough to recover certain secret profits alleged to have been fraudulently earned by the latter while acting as Gray's agent in the consummation of a real estate transaction. After trial, judgment was entered for the plaintiff therein. An appeal was seasonably prosecuted by Yarbrough, which terminated in a reversal of the judgment with directions to the lower court that the plaintiff, Gray, be permitted within a reasonable time to so amend his complaint as to show that the cause of action therein alleged had not become barred by the running of the three-year period prescribed in section 338 of the Code of Civil Procedure. (*Gray* v. *Yarbrough,* 61 Cal. App. 724 [215 Pac. 914].) Plaintiff thereafter pursued the suggested course and filed an amended complaint. The defendant Yarbrough filed a demurrer thereto, which was overruled on September 17, 1923. Notice of the entry of the order overruling the demurrer having been waived the defendant, Yarbrough, was given ten days within which to answer. He failed to answer within the time allowed and his default was entered on September 29, 1923, by the respondent herein, as county clerk of Sacramento County. Judgment thereon was entered April 1, 1924, in favor of the plaintiff, Gray. The judgment so entered, after referring to Yarbrough's failure to file an answer to the amended complaint, decreed that "by reason of the law and the premises aforesaid it is ordered, adjudged and decreed . . . that the judgment which defendant Yarbrough obtained against . . . F. W. Herbert . . . for the sum of . . . $1573.37 in the superior court of Placer county, California, on the 2nd day of May, 1921, as described in plaintiff's second amended complaint, was obtained by defendant Yarbrough as trustee for, and for the benefit of, plaintiff, and said judgment has inured to

the benefit of and now belongs to said plaintiff, and that said P. L. Yarbrough never had any interest therein or right thereto; that defendant P. L. Yarbrough be and he is hereby required to make and execute the necessary transfers and assignments to convey and transfer said judgment to plaintiff, and in the event of the neglect or failure of said P. L. Yarbrough to assign and transfer said judgment to plaintiff, the clerk of this court be and he is hereby directed to make the necessary transfer and assignment thereof to this plaintiff.'' This judgment is in full force and effect, for it has never been appealed from, vacated, or set aside. Yarbrough, after notice and demand served, refused to abide by the mandatory provisions of said judgment and has neglected to execute an assignment or transfer, as directed, in favor of Gray of the judgment entered in the case of *Yarbrough* v. *Herbert.* Proof of such demand and refusal was filed with the respondent county clerk and demand made upon him to cause the transfer of said judgment. His refusal to act in the premises led to the institution of this *mandamus* proceeding to compel him to make such transfer in accordance with the provisions of the judgment entered in *Gray* v. *Yarbrough.* The lower court denied petitioner's application and refused to issue a writ of mandate, whereupon this appeal was taken.

In opposition to the issuance of such a writ the respondent vigorously contends that the judgment in *Gray* v. *Yarbrough,* under which the appellant seeks to have the judgment in *Yarbrough* v. *Herbert* assigned to him, is void on its face for the reason that Yarbrough's default in the former action was improperly entered and judgment taken against him without authority in law. Respondent points out in support thereof that the amended pleading filed in *Gray* v. *Yarbrough* left the material allegations of the original complaint substantially unchanged and added thereto only such allegations as were necessary to show that the cause of action for fraud therein alleged had not become barred by the running of the statutory period of limitation. In view of this asserted immaterial amendment of the complaint the respondent urges that ''where an answer is on file to a complaint a default cannot be taken for failure to answer a later amended complaint where the defenses

pleaded in the original answer put in issue the material allegations of the amended complaint.'' In other words, respondent urges that Yarbrough's answer to the original complaint precluded the entry of a default for failure to answer the amended complaint.

Some of the earlier authorities would seem to indicate that an amended complaint supersedes the original for all purposes. The case of *Redington* v. *Cornwell*, 90 Cal. 49, 60, 61 [27 Pac. 40, 43], however, correctly interprets these decisions and declares: ''It has been said in a number of cases that an amended pleading supersedes the original; but I think a careful examination of those cases will show that it was only intended to *decide* that the amended pleading superseded the original for certain specified purposes, and only to the extent of the amendment. Beyond this, whatever may have been said is mere *dictum*. But in none of the cases has it been even said that the original is not a part of the judgment roll; nor has it been decided that an original complaint is superseded for the purposes of showing when the action was commenced, and whether or not a new or different cause of action was introduced by the amendment. For the purpose of determining these questions, and perhaps others that may arise, which often become material on appeal, the amended complaint can by no possibility supersede the original.'' With this declaration before us we have examined both the original complaint and the amended complaint filed in the case of *Gray* v. *Yarbrough* and have concluded that the allegations and cause of action found in each are substantially identical. We have failed to find any material alteration in the cause of action as alleged in the amended complaint. Under these circumstances the question immediately confronting us is whether Yarbrough's answer putting in issue the material allegations of the original complaint was available to him, in the absence of a supplementary or amended plea, as an answer to the amended complaint. If this question be affirmatively disposed of it will necessarily follow, as contended for by respondent, that Yarbrough's default in the case of *Gray* v. *Yarbrough* was improperly taken.

It has been generally held that where a plaintiff amends his declaration or complaint so as to change the cause

of action, or add a new one, it constitutes an abandonment of the original issues, and judgment by default may be taken against the defendant if he fails to file a new or amended answer or plea within the time allowed therefor, notwithstanding the original answer or plea is still on file. (34 C. J. 164, sec. 375d, and authorities there cited.) This rule is without application, however, where the amendment is merely as to formal or immaterial matters, and does not change the cause of action; nor does it apply where the original plea or answer set forth a sufficient defense to the declaration or complaint as amended. (*Lincoln Co. Bank* v. *Fetterman,* 170 Cal. 357, 360, 361 [149 Pac. 811]; *Brock* v. *Martinovich,* 55 Cal. 516; *Fox* v. *Hale & Norcross etc. Co.,* 5 Cal. Unrep. 980 [53 Pac. 32, 40, 41]; *Ermentraut* v. *American Fire Ins. Co.,* 63 Minn. 194 [65 N. W. 270]; *Kelly* v. *Bliss,* 54 Wis. 187 [11 N. W. 488, 490]; *Yates* v. *French,* 25 Wis. 661, 663–665; *Kuhuke* v. *Wright,* 22 Kan. 325, 327; *Cohen* v. *Hamill,* 8 Kan. 621; 3 Freeman on Judgments, 5th ed., 2640, sec. 1268a; 1 Ency. of Pl. & Pr. 628, and authorities there cited.)

In the case of *Lincoln Co. Bank* v. *Fetterman, supra,* it is declared that "Section 432 of our Code of Civil Procedure in declaring that the amendments, or the complaint as amended, must be answered by the defendant within ten days, or such other time as the court may direct, is but a direction to compel the joining of issues within a reasonable time so as to expedite the trial of actions. It still rests within the sound discretion of the court as to whether any time shall be allowed to the defendant to answer, and whether or not time will be allowed will depend upon the nature and character of the amendment to the complaint. It states the rule too broadly, therefore, to say that because a complaint is amended, even in most trivial and unimportant particulars, the defendant has the absolute right to time and to the postponement of the case to plead to this amendment. . . . In the present case, all that the plaintiff asked leave to do and did was to make more specific an allegation of nonpayment of a promissory note, which allegation was certainly sufficient to pass a general demurrer. It could not have taken defendant by surprise to have had this allegation of nonpayment made more specific. It could not

have introduced any new element in the case which he was not prepared to meet. . . . This being so, then the amendment raised no new issue and presented no new proposition which the defendant was called upon to meet and the court was absolutely justified in refusing leave to the defendant to amend. . . . The original answer was not only not eliminated by virtue of the amendment to the complaint, but was the answer joining the issues upon which the action was tried. It was an essential part of the judgment roll. . . . ''

The case of *Fox* v. *Hale & Norcross etc. Co.*, *supra*, indicates that upon the second trial of a cause the answer to the original complaint may serve as a plea to an amended complaint filed during the progress of the first trial to conform to the proofs there adduced. It is stated in the opinion that ''The answer already in was as appropriate to the complaint as amended as before the amendment, for it was in all material respects the same identical pleading.''

*Ermentraut* v. *American Fire Ins. Co.*, *supra*, is very persuasive upon the point under consideration. The opinion therein states that ''The judgment was wholly unauthorized, and the court was clearly right in setting it aside. Counsel for the plaintiffs proceeded upon the erroneous idea that, inasmuch as an amended pleading supersedes the original, therefore all subsequent pleadings are also superseded and cease to be a part of the record, and hence an answer to the original cannot stand as an answer to the amended pleading. This was not the rule either at common law or in equity, and the rule has not been changed by the code. The rule in common-law actions is correctly stated in Tidd's Practice, 708, and notes, as follows: 'After an amendment of a declaration, the defendant is at liberty to plead *de novo;* that is, he may do so if he has occasion or thinks proper, but he is not obliged to vary his first defense.' Also: 'Anciently, it seems, the defendant did not plead *de novo* after an amendment, but he is now at liberty to do so when the amendment is of such a nature as to occasion any alteration in the plea, but not otherwise.' The chancery practice was the same. If a bill was amended after answer, the defendant was not required to put in a new or further answer, unless the amendment consisted of the allegation of new facts, which would vary the rights of the parties;

and even in that case he was not required to file an entirely new answer, repeating the allegations of his original one, but merely a supplemental answer to the new facts alleged in the amended bill. . . . In short, when a complaint is amended after answer, the defendant is not bound to answer *de novo*. He may do so if he chooses; but, if he does not elect to do so, his original answer stands as his answer to the amended complaint; and in such case he will not be in default except as to the additional facts set up in the amended complaint, and not put in issue by the answer. . . . '' ▇ In the light of these authorities we are of the firm opinion that it was error to disregard Yarbrough's answer to the original complaint and his default was, therefore, improperly taken and entered in the case of *Gray* v. *Yarbrough*.

▇ Notwithstanding that it was error for the trial court to enter the default of Yarbrough in the original case, the judgment thereafter entered is not subject to collateral attack in this *mandamus* proceeding. It is not void on its face. Whether or not the defendant Yarbrough should have been permitted to answer was a question of law necessarily involved in the original case, and there can be no doubt that it was within the jurisdiction of the superior court to decide that question. The judgment rendered there is in full force and effect, for it was not appealed and has not been vacated or set aside. The decision of the court was final and cannot be reviewed on appeal, for there is now no appeal. Nor will a review be permitted upon this application for a writ of mandate. Assuming that *mandamus* is a remedy open to the petitioner, there is nothing in the law relating to such a proceeding to indicate that the respondent may avail himself of the position, which he now takes, to review the decision of the court in the original action upon a question of law which does not involve the jurisdiction or powers of the court to act in the matter. If the court had determined in the original action that the answer of the defendant there was sufficient, or had refused to enter his default for not answering, the respondent would not now be contending that the court had no jurisdiction to so decide. It is fundamental that it had jurisdiction to decide the matter either way. Jurisdiction in cases of this

character implies the power of the court to decide a question wrongly as well as rightly. It was not necessary for us to determine in this proceeding whether the ruling of the court in the original action was correct or not. This being a collateral attack upon the judgment, we need have gone no further than to determine whether it was void or not. (*Howe* v. *Southrey*, 144 Cal. 767, 769 [78 Pac. 259].) But, because of the importance of the question involved in its relation to our method of pleading, we deemed it advisable to do so, with the result already announced.

The judgment in *Gray* v. *Yarbrough* was voidable merely and not void, and is but an instance of an erroneous exercise of jurisdiction and not of an entire lack, or even loss, of jurisdiction. Jurisdiction is but the power to hear and determine, and it does not depend upon the correctness of the decision made. (*Bennett* v. *Wilson*, 133 Cal. 379, 385 [85 Am. St. Rep. 207, 65 Pac. 880]; *Rountree* v. *Montague*, 30 Cal. App. 170, 178 [157 Pac. 623].) The court having acquired jurisdiction of the subject matter and of the parties, its judgment is not void for the mere erroneous decision on a question of law, however important that question may have been in contemplation of the rights of the parties in the original action. A judgment is never absolutely void if the court had jurisdiction of the subject matter and the person of the defendant, no matter how erroneous it may be. (*Mayo* v. *Ah Loy*, 32 Cal. 477, 480 [91 Am. Dec. 595]; *Crew* v. *Pratt*, 119 Cal. 139, 151 [51 Pac. 1099].) The manner of exercising its jurisdiction cannot make void the action of the court. (*Cloud* v. *El Dorado County*, 12 Cal. 128, 133 [73 Am. Dec. 526].) Neither will such judgment be in the least affected because its impotency appears from the judgment-roll. (*Wood* v. *Jordan*, 125 Cal. 261, 262 [57 Pac. 997]; *Rountree* v. *Montague, supra.*) In 1 Freeman on Judgments, fifth edition, paragraph 360, the author says: "The character and scope of the issue upon collateral attack have already been defined. Jurisdiction appears to be the keynote of every such controversy. Efforts to avoid the judgment must be directed to proving a want of power in the court rendering it. Upon this point the cases are clear. They emphasize the difference between an absence of jurisdiction and the irregular

or erroneous exercise of it. The line which distinguishes the two is very definite and is precisely that which denotes the cases where a judgment is reversible only or, on the other hand, may be declared a nullity when interposed collaterally. Consequently it is a firmly established rule of the law of collateral attack that once jurisdiction of the subject matter and the parties is acquired, no errors or irregularities in the subsequent proceedings which do not induce a loss of such jurisdiction will avail to defeat the judgment.'' Jurisdiction has often been said to be ''the power to hear and determine.'' It is in truth the power to do both or either—to hear without determining or to determine without hearing. (*Ex parte Bennett,* 44 Cal. 84, 88.) It has even been held that a judgment ordered without a trial cannot be attacked collaterally. (*Johnston* v. *San Francisco Sav. Union,* 75 Cal. 134, 139 [7 Am. St. Rep. 129, 16 Pac. 753].)

Although the court in the original action committed error which would have called for reversal on appeal, it had acquired jurisdiction to act in the premises long before its commission, and its judgment having become final without appeal or other direct attack, it is now conclusive against this collateral attack, whether the matter was rightly or wrongly decided as to the matters presented or which should have been presented on the hearing. (*Creditors' Adjustment Co.* v. *Newman,* 185 Cal. 509, 513 [197 Pac. 334].) Where jurisdiction has attached any irregularities thereafter occurring merely render the judgment erroneous or voidable. (*Estate of Newman,* 75 Cal. 213, 220 [7 Am. St. Rep. 146, 16 Pac. 887]; *May* v. *Hatcher,* 130 Cal. 627, 629 [63 Pac. 33]; 1 Freeman on Judgments, 5th ed., par. 321 et seq.) The case of *Endowment Department etc.* v. *Harvey,* 6 Ala. App. 239 [60 South. 602, 604], presented a situation somewhat similar to the one before us in the instant proceeding, in that a default judgment was improperly entered against the defendants therein while demurrers were on file and undisposed of. In that case the court held that, while the entry of such judgment was erroneous and voidable, yet the judgment was not void. In *Chehalis Coal Co.* v. *Laisure,* 97 Wash. 422 [166 Pac. 1158, 1160], a default judgment was erroneously entered pending the disposition

of a motion in the cause. After pointing out that the lower court had properly secured jurisdiction of both the person and subject matter, the opinion declared that "If through fraud or concealment practiced upon it, or through inadvertence or mistake, it thereafter entered a judgment prematurely or while a motion was pending undisposed of and without notice, the judgment was irregularly entered. It was voidable, not void." In *Estate of Newman, supra,* judgment was rendered upon default entered before the time allowing the defendant to answer had expired. This court held that it was error simply, not void, and could be attacked only on motion or by appeal. In a much earlier case, in which the judgment was attacked collaterally upon the ground that the defendant, although served with process, was not given the time allowed by law to appear and answer, Mr. Chief Justice Murray said: "There can be no controversy upon the proposition that a personal judgment of a court of general jurisdiction is invalid for the purpose of acquiring any rights under it, when it appears affirmatively on the face of the record that the court had acquired no jurisdiction over the person of the defendant. There is, however, a very decided distinction between want of jurisdiction and irregularity in procuring jurisdiction. In the latter case some of the authorities speak of it as want of jurisdiction, but when so employed it is a loose and improper use of the term." (*Whitwell* v. *Barbier,* 7 Cal. 54, 63; see, also, *Peck* v. *Strauss,* 33 Cal. 678, 685.) Such "loose and improper use of the term" will be frequently found in decisions in cases involving direct attacks on judgments which are there termed "void," when they are only "voidable."

It cannot be denied that, in those cases in which judgments have been rendered without any or insufficient service, or where the party not only has had no opportunity to answer, but is so ignorant of any proceeding against him as not to have been able to avail himself of the remedies which the law gives him until he has lost them all, the judgment is absolutely void. Such a judgment may be attacked at any time, directly or collaterally. (*People* v. *Harrison,* 84 Cal. 607, 608 [24 Pac. 311].) But it is a fundamental principle, everywhere prevailing, that where a court has jurisdiction of the person of the parties and the subject

matter of the controversy submitted to it by them, its judgment thereon cannot be impeached collaterally or otherwise than by some form of direct attack, although it may appear on the face of the record that error was committed by the court in determining the question. (*Cellulose Package Mfg. Co.* v. *Calhoun,* 166 Cal. 513, 515 [137 Pac. 238]; *Le Mesnager* v. *Variel,* 144 Cal. 463, 465 [103 Am. St. Rep. 91, 77 Pac. 988].) If it were the rule that judgment in every case in which it appeared on the face of the record that error was committed by the court rendering it is subject to collateral attack the doctrine of the finality of judgments would become a myth. This court long ago considered the precise question we are now discussing, and said: "If, after acquiring jurisdiction of the parties and subject matter of an action, a superior court should order judgment in favor of one of the parties without a trial, that judgment would neither be 'without or in excess of the jurisdiction of such tribunal,' although it might be erroneous, as any judgment might be if rendered upon the naked pleadings in a case where the pleadings raised a material issue." (*Clark* v. *Superior Court,* 55 Cal. 199, 200.)

The contention is also advanced here that the action of the trial court in entering the judgment amounted to a denial of "due process." The contention is untenable. Due process of law is law in its regular administration through courts of justice and means "a course of legal procedure according to those rules and principles which have been established in our system of jurisprudence for the enforcement and protection of private rights." (*Pennoyer* v. *Neff,* 95 U. S. 714 [24 L. Ed. 565]); "and when secured by the law of the state the [federal] constitutional requirement is satisfied." (*Leeper* v. *Texas,* 139 U. S. 462, 468 [35 L. Ed. 225, 11 Sup. Ct. Rep. 577, see, also, Rose's U. S. Notes].) A state cannot be deemed guilty of a violation of the federal constitutional provision relating to due process because one of its courts, while acting within its jurisdiction, has made an erroneous decision. (*Arrowsmith* v. *Harmoning,* 118 U. S. 194 [30 L. Ed. 243, 6 Sup. Ct. Rep. 1023].) Any irregularities in procedure are matters for the consideration of the judicial tribunal within the state empowered by the law of the state to review and correct error committed by

the courts. (*Iowa Central Ry. Co.* v. *Iowa*, 160 U. S. 389, 393 [40 L. Ed. 467, 16 Sup. Ct. Rep. 344].) Due course of law under the state constitution and due process of law under the federal constitution mean the same thing. (*Griggs* v. *Hanson*, 86 Kan. 632, 634 [Ann. Cas. 1913C, 242, 52 L. R. A. (N. S.) 1161, 121 Pac. 1094].) It is the right of a litigant to have his cause tried and determined under the same rules of procedure that are applied to other similar cases, and when this is afforded to him he has no ground to complain that due process of law is not being observed. (*Estate of McPhee*, 154 Cal. 385, 390 [97 Pac. 878].)

A judgment obtained against a defendant in an action in which there has been no service of summons or voluntary appearance is void by reason of the absence of jurisdiction in the court to render it; but that is so only where original jurisdiction is exercised, and does not relate to a decision on a collateral question in a case where the parties are before the court. (*Walden* v. *Craig's Heirs*, 39 U. S. (14 Pet.) 145, 154 [10 L. Ed. 393, see, also, Rose's U. S. Notes]; *Cowles* v. *Cowles*, 80 N. H. 530 [120 Atl. 76]; *Bonney* v. *McClelland*, 235 Ill. 259, 261 [85 N. E. 242].) The notice essential to due course and process of law is the original notice whereby the court acquires jurisdiction, and is not notice of the time when jurisdiction, already completely vested, will be exercised. The court having once acquired jurisdiction, "however wrong the result of the proceeding may be, missteps occurring in the course of it constitute irregularities and errors in procedure and . . . cannot be conjured into anything graver by the use of impressive and high-sounding characterizations." (*Griggs* v. *Hanson, supra; Cramer* v. *Farmers' State Bank*, 98 Kan. 641 [158 Pac. 1111].) Whether notice of subsequent proceedings, after the court has acquired jurisdiction by original process, will or will not be required is a matter of legislative discretion. After jurisdiction has attached, the party has no constitutional right to demand notice of further proceedings. (*Estate of McPhee, supra; Brown & Bennett* v. *Powers*, 146 Iowa, 729, 732 [125 N. W. 833]; *Savage* v. *Welch*, 246 Mass. 170, 184 [140 N. E. 787].) If the defendant in the original action was entitled by statute or rule of court, to notice of

the entry of default and application for the judgment, want of such notice does not render the judgment void. (*Egan* v. *Sengpiel*, 46 Wis. 703, 709 [1 N. W. 467].)

In the case before us Yarbrough, as defendant, was a party to the first trial, and it was by reason of his successful appeal from the judgment there rendered that the amended complaint was permitted to be filed in the court below. He continued his active participation in the case and interposed a demurrer to the amended pleading. When it was overruled he waived notice of the order overruling the demurrer and giving him time to answer. So far as the record discloses, he took no more interest in the matter. From that fact it would seem that he invited the further action of the court, which resulted in default and judgment being entered against him. He had his remedy in the due and orderly procedure provided by the legislature for the correction of error in judicial proceedings. He failed to avail himself of it and cannot now claim that due process of law was in any way denied him.

The judgment is reversed, with directions that a writ of mandate issue as prayed for.

Langdon, J., Seawell, J., and Curtis, J., concurred.

RICHARDS, J., Concurring.—I concur in the order for the issuance of a writ of mandate herein, not only upon the grounds set forth in the majority opinion, but upon the additional ground that, even conceding the judgment in the case of *Gray* v. *Yarbrough* to be void upon its face, the respondent herein does not stand in such a relation thereto as would enable him to attack such judgment collaterally upon that ground. The rule upon this subject applicable to judgments void upon their face is thus set forth in Freeman on Judgments: "It must not, however, be understood that all strangers are entitled to impeach a judgment. It is only those strangers who, if the judgment were given full force and effect, would be prejudiced in regard to some pre-existing right that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause nor appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to

be enforced against them so as to affect rights or interests acquired prior to its rendition.'' (1 Freeman on Judgments, 5th ed., sec. 319.) The learned author cites a large number of cases in support of the foregoing limitation upon the right of assault collaterally upon a judgment void upon its face. The respondent herein comes within none of the classes of persons entitled to attack this judgment, conceding it to be void upon its face. He was not a party to the original action. He is not a party to the judgment rendered therein. His name is not mentioned therein and his whole connection with such judgment consists in the fact that he happened to hold the position of clerk of the court in which said judgment was rendered. Said judgment directs, not this respondent by name, but ''the clerk of the court'' to execute the conveyance in question in the event of the failure or refusal of the defendant so to do, and thus carry into effect the judgment of the court directing such conveyance to be made. As such ''clerk of the court'' this respondent is merely an administrative arm of the court performing a similar function to that performed by him when he entered the defendant's default, or filed or recorded the judgment entered thereon. From time immemorial courts of equity have made similar use of their clerks or bailiffs or sheriffs or other administrative officers to assist in carrying into effect judgments of this character, and in fact have found it necessary so to do in order to render effective their decrees. The administrative officers of the court so selected are in nowise injuriously affected by the judgment itself, and to allow such officers of the court rendering such a judgment to question its validity collaterally would be to open the door to serious interferences with the judgments and processes of courts on the part of those who have no interest in the subject matter of the judgment, but whose only duty in relation thereto is that of its enforcement. For the foregoing reasons I am of the opinion that this respondent is in no position to refuse to execute the purely administrative duty with relation to the judgment in question which the court, in order to render it effectual, directed its clerk to perform.

PRESTON, J., Dissenting.—I am unable to concur in the conclusion in this case. I heartily concur, however, in so

much of the opinion as holds the answer on file to be a sufficient traverse of the allegations of the complaint.

The net result of the situation then is that a defendant who has fully answered the plaintiff's complaint has, without a hearing or a chance to be heard, had his property taken from him by *ex parte* action of the court. The question may again be stated as follows: Is due process of law satisfied where a defendant has appeared and set up a complete defense to the cause of action against him and yet, having been given no opportunity to be heard, has had entered against him without fault on his part, a judgment depriving him of his property?

It is readily agreed by all that such an act of the trial court is erroneous and may be reviewed upon appeal or other direct attack. The judgment-roll in this case is offered in evidence in a proceeding brought to carry into effect the same judgment. There is grave doubt as to whether the resistance of such an attempt is not itself a direct attack, but for the purposes of this discussion it may be assumed to be a collateral attack. Is such a judgment void upon collateral attack?

It is a well-settled proposition that any action by a trial court in excess of its jurisdiction is void. The chief distinction between a collateral and a direct attack upon such a judgment is that in a collateral attack the evidence which may be received to show excess of jurisdiction is restricted to the judgment-roll as defined by law at the time of the rendition of the judgment. But where by a resort to such evidence the want of vitality in the judgment is demonstrated, the duty to declare it void is as imperative on collateral as on direct attack. This principle is found, among other places, in the following cases: *People* v. *Greene,* 74 Cal. 400, 405 [5 Am. St. Rep. 448, 16 Pac. 197] ; *People* v. *Davis,* 143 Cal. 673, 675, 676 [77 Pac. 651]. The latter case was an appeal from an order vacating and setting aside a prior order vacating and setting aside a judgment by default, and there the court said: "Such an order occupies no better position than a judgment that is void upon its face, and, like such a judgment, is assailable wherever and whenever it may be produced, and whether the attack upon it be direct or collateral. In *People* v. *Temple* the attack upon such an order

was collateral, and the order was held to be a mere nullity. . . . As was held in *People* v. *Greene,* 74 Cal. 400, 405 [5 Am. St. Rep. 448, 16 Pac. 197], 'A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its want of vitality, is a dead limb upon the judicial tree, which should be lopped off, if the power so to do exists. It can bear no fruit to the plaintiff, but is a constant menace to the defendant.' . . . While it is immaterial in a certain sense whether such a judgment or order be formally set aside, for it neither binds nor bars anyone, still it is well settled that the court whose records are thus encumbered with what is a mere form without substance may at any time formally remove the same by declaring it a nullity.''

In 15 R. C. L., page 847, section 321, under the heading "Collateral Attack for Want of Notice," it is said: "It is a fundamental principle of the common law, founded in justice and sound policy, that no judgment or decree affecting the person or property of an individual shall be valid, unless notice, actual or constructive, is given to the individual whose rights are to be affected. Every man is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision of the question. Such notice and opportunity to be heard are essential elements of due process of law, and the sentence or judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights, and is not entitled to any respect in any other tribunal."

The judgment-roll in the case at bar consists of the pleadings and the judgment (Code Civ. Proc., sec. 670). The pleadings are the original and amended complaint and the answer. The judgment affirmatively shows the following: "In this action the defendants . . . were regularly served with plaintiff's second amended complaint herein, and defendant P. L. Yarbrough having filed a demurrer thereto, which demurrer was by the court overruled, and said defendant . . . having failed to answer plaintiff's second amended complaint within the time allowed therefor, and the defendant Elmer H. Gum, as sheriff of Placer county, California, having failed to answer or demur to said second

amended complaint, and the legal time for answering having expired, the defaults of said defendants . . . were duly entered according to law. . . . ''

We then have a case where the answer has been ignored *in toto*. The defendant has been given no hearing and all he has received is a judgment against him, which directs him to deliver by assignment his property to plaintiff. Has he had his day in court under the terms ''due process of law'' or ''law of the land''? It may freely be conceded that where jurisdiction of the subject matter and person are both present, any error, however gross or far-reaching, made by the court in the exercise of its jurisdiction, will not render a judgment void and relief therefrom may not be had by collateral attack. But it must always be remembered that this statement must be held to include the right and opportunity to be heard. If such right is denied, it is as though jurisdiction of the person is repudiated or disclaimed. ''The denial to a party in such a case of the right to appear is in legal effect the recall of the citation to him.'' (6 R. C. L., sec. 446, p. 451.)

This is doubtless what Mr. Freeman (1 Freeman on Judgments, 5th ed., par. 360, p. 749), quoted in the majority opinion, means by the use of the following language: '' . . . no errors or irregularities in the subsequent proceedings which do not induce a loss of such jurisdiction will avail to defeat the judgment.'' In the case under consideration the court in effect struck out, without cause, the answer of defendant. It was directly effective to ''induce a loss'' of jurisdiction. The principle here attempted to be stated is elsewhere set forth as follows:

''It is a cardinal principle of our jurisprudence that one shall not be bound or concluded by a judgment, either in respect to his person or property, unles he has had his day in court, by which is meant until he has been duly cited to appear and has been afforded an opportunity to be heard, and upon such hearing to offer evidence in support of his cause.'' (5 Cal. Jur., pp. 875, 876, sec. 224.)

''It was a maxim of the common law that no man should be punished without an opportunity of being heard, and it has been broadly stated that due process of law requires an orderly proceeding, adapted to the nature of the case, in

which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. To assert that courts have inherent power to deny all right to defend an action and to render decrees without any hearing whatever is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends. . . . When the right to a hearing is denied, the mere giving of a notice is ineffectual for any purpose within the meaning of the constitutional guaranty. The denial to a party in such a case of the right to appear is in legal effect the recall of the citation to him. For example, ordering one to pay alimony without having had his day in court and a hearing on the question of the marriage, when that is denied, amounts to a taking of his property without due process of law." (6 R. C. L., sec. 446, pp. 450, 451.)

This principle has many times been recognized in California. The case of *Hite* v. *Hite*, 124 Cal. 389 [71 Am. St. Rep. 82, 45 L. R. A. 793, 57 Pac. 227], is cited as authority for the foregoing statement. In *Baker* v. *Baker*, 136 Cal. 302 [68 Pac. 971], upon filing the complaint, the court made an order, *ex parte*, requiring the defendant to pay alimony. Such order was held to be unauthorized and void, as the court had not acquired jurisdiction over the person of the defendant at the time it was made, as there had been no service of process in the action or notice of the application for the order. In that case it is said: "No valid order or judgment affecting a person or his property can be rendered against him without a hearing or an opportunity to be heard. This is a rule of law so well understood as to be elementary, at least since the famous Dartmouth College case. As said in *Hite* v. *Hite*, 124 Cal. 393 [71 Am. St. Rep. 82, 45 L. R. A. 793, 57 Pac. 229] : 'To satisfy the requirement of due process of law it is not always necessary that such trial should be afforded as is had in ordinary suits in courts of justice. The hearing allowed must be such as is practicable and reasonable in the particular case. . . . Cooley says, "the opportunity to be heard must be such as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual

rights as these maxims prescribe for the class of cases to which the one in question belongs." ' "

In *McClatchy* v. *Superior Court*, 119 Cal. 413, 419 et seq. [39 L. R. A. 691, 51 Pac. 696], this question is again discussed. The phrases "due process of law" and the "law of the land" are considered and a quotation from Mr. Webster in the famous Dartmouth College case is cited as follows: "By law of the land is most clearly intended the general law, which hears before it condemns, which proceeds from inquiry and renders judgment only after trial. The meaning is, that every citizen shall hold life, liberty, property, and immunities under the protection of general rules which govern society."

Said case also discusses and cites with approval *Hovey* v. *Elliott*, 167 U. S. 409 [42 L. Ed. 215, 17 Sup. Ct. Rep. 841], stating: "And in the very recent case of *Hovey* v. *Elliott*, decided by the Supreme Court of the United States, where, in a civil action, the court had stricken out the answer of a party because of his contempt of an order requiring him to pay money into court, and rendered judgment against him *pro confesso*, it was held that the act was beyond the power of the court, for the reason that it deprived the party of the right to be heard in his defense; and that the judgment so entered against him was void, even as against collateral attack. Among other things, it is there said: 'Can it be doubted that due process of law signifies a right to be heard in one's defense? If the legislative department of the government were to enact a statute conferring the right to condemn the citizen without any opportunity whatever of being heard, could it be pretended that such an enactment would not be violative of the constitution? If this be true, as it undoubtedly is, how can it be said that the judicial department, the source and fountain of justice itself, has yet the authority to render lawful that which if done under the express legislative sanction would be violative of the constitution? If such power obtains, then the judicial department of the government, sitting to uphold and enforce the constitution, is the only one possessing a power to disregard it. If such authority exists, then, in consequence of their establishment to compel obedience to law and enforce justice, courts possess the right to

inflict the very wrongs which they were created to prevent.' "

It is therein further held: "And, as showing that it is not sufficient that the court shall go through the mere form of citing a party to appear upon the pretense of giving him a hearing while in fact denying him the right in its substance, it is there said: 'Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be by the law of its organization over the subject matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it is a summons to him to appear and speak, if he has anything to say, why the judgment sought should not be rendered. The denial to a party of the benefit of a notice would be in effect to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether. It would be like saying to the party, appear and you shall be heard; and, when he has appeared, saying, your appearance shall not be recognized, and you shall not be heard.' And, quoting from *Galpin* v. *Page*, 18 Wall. 350 [21 L. Ed. 959], it is said: 'It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is a judicial usurpation and oppression, and can never be upheld where justice is justly administered.' "

In the case of *Foley* v. *Foley*, 120 Cal. 33 [65 Am. St. Rep. 47, 52 Pac. 122], the court below struck out the demurrer of defendant, refused to permit him to answer and rendered judgment against him *pro confesso* for his failure to obey its order for alimony. This court, upon authority of *Hovey* v. *Elliott, supra*, held that the court below was authorized to enter the judgment, saying, among other things: "Where a given act amounts to the invasion of a constitutional right, we can perceive no well-founded distinction in principle whether such invasion come from an attempted legislative sanction, or from the naked, unauthorized act of the court. The one is as ineffectual as the other."

In the case of *Meacham* v. *Bear Valley Irr. Co.*, 145 Cal. 606, 608 [68 L. R. A. 600, 79 Pac. 281], a trial by jury was waived and when the cause came on for trial the plaintiff's counsel read the verified complaint and answer and called a witness to the stand, who was duly sworn by the clerk. Thereupon the court made an order reciting that the parties had been requested to deposit with the clerk each one-half of the reporter's per diem to abide the result of the suit; that the reporter had refused to report the testimony unless the fees were paid, and that the defendant had refused to comply with said request, and concluding with the following language: "It is therefore ordered that the defendant deposit the fee of the reporter within five minutes, or a judgment will go for plaintiff as prayed for." Defendant's counsel refused to obey the order and judgment was thereupon entered for plaintiff. Upon appeal this court held: "The failure or refusal of a defendant to pay the costs of an action, or any portion thereof, in advance of a trial, does not authorize the court to deprive him of his defense to the action. The guarantee of the Constitution that he shall not be deprived of his property without due process of law gives him the right to be heard in its defense against any claim that may be made against him for its possession; and he is not to be deprived of this right as a penalty for failing to comply with some rule of court."

In the case of *Younger* v. *Superior Court*, 136 Cal. 682 [69 Pac. 485], this court, upon *certiorari*, set aside and annulled an order of the superior court of Santa Cruz County striking a complaint from the files. Said order recited that the complaint was false, deceitful, and abusive of the process and proceedings of the court in the matter of the allegation that Honorable Lucas F. Smith (the judge then presiding) claimed to have some interest in or claim to the land therein described, and further stated: "It further appearing to the court that said allegation in so far as it relates to the said Lucas F. Smith is absolutely false, and was known by said plaintiff Helen Younger at the time of the signing of said complaint, and also at the time of the filing thereof, to be false, . . . " Again, upon authority of *Hovey* v. *Elliott*, *supra*, and *McClatchy* v. *Superior Court*, *supra*, the order was set aside and annulled, this court saying, among other

things: ''The court in making the order exceeded its jurisdiction, and there is no other plain, speedy, and adequate remedy. No judgment was entered and there does not appear to be any right of appeal from the order. 'Any departure from those recognized and established requirements of law, however close the apparent adherence to mere form in method of procedure, which has the effect to deprive one of a constitutional right is as much an excess of jurisdiction as where there is an inceptive lack of power.' ''

This same principle has also been recognized many times in other jurisdictions. See *Hovey* v. *Elliott, supra; Morley* v. *Morley,* 131 Wash. 540 [230 Pac. 645], which cites with approval the above quotation from 15 R. C. L., p. 847, sec. 321. Likewise, in *City of Taylorville* v. *Central Ill. etc. Co.,* 301 Ill. 157 [133 N. E. 720, 721], it is said: ''It is an essential of due process of law that every person whose property rights are to be affected shall have notice and an opportunity to be heard to defend, enforce, and protect his rights. The Workmen's Compensation Act makes no provision for notice to a third party nor duty nor opportunity to be heard or to contest the amount of compensation to be awarded, and the defendant had neither notice nor hearing before the administrative body that fixed the amount to be allowed. A statute providing that the defendant should pay a certain sum as damages for its negligent act, without notice or a hearing as to the amount of such damage, would violate the Constitution. *Campbell* v. *Campbell,* 63 Ill. 462; *Gage* v. *City of Chicago,* 225 Ill. 218 [80 N. E. 127]; *Hultberg* v. *Anderson,* 252 Ill. 607 [97 N. E. 216]; 6 R. C. L., 450; 12 Corpus Juris, 1195.''

In *Lacher* v. *Venus,* 177 Wis. 558, 572 [24 A. L. R. 403, 188 N. W. 613, 618], it is said: ''Notice that some particular judicial proceedings are already instituted or proposed to be instituted; notice of the time and place where such hearings are to be had; reasonable opportunity to be heard—are the essentials of due process of law; anything short of this is absence thereof. *Seifert* v. *Brooks,* 34 Wis. 443, 448; *State ex rel. Mil. Med. Col.* v. *Chittenden,* 127 Wis. 468, 506 [107 N. W. 500]; *Ekern* v. *McGovern,* 154 Wis. 157, 240 [46 L. R. A. (N. S.) 796, 142 N. W. 595]; *Truax* v. *Corrigan,* 257 U. S. 312 [27 A. L. R. 375, 66 L. Ed. 254, 42 Sup. Ct.

Rep. 124], decided December, 1921; 12 C. J., p. 1192; 6
R. C. L., p. 446. There having been a lack of due process
of law, the attempted adoption proceedings in the county
court of Monroe County in August, 1918, were void.''

These cases are all in point because there can be no differ-
ence between a case where the court had an excuse, although
insufficient, for denying a hearing and a case like the one
before us where no legal excuse existed.

The authorities cited in the main opinion may with profit
be noted here. The first and only important one is *In re
Newman*, 75 Cal. 213 [7 Am. St. Rep. 146, 16 Pac. 887].
In that case the proceeding under consideration was an at-
tack twice removed from a direct attack. Bernard Newman
died intestate and without wife or blood issue. An alleged
adopted son, through his mother, as guardian, applied for
letters of administration. The application was contested
by a brother of decedent, who assailed the adoption proceed-
ings. The chief ground of attack was that said proceedings
were illegal because the father of the child had not con-
sented thereto. The petitioner contended that this consent
was unnecessary, as the mother and father were divorced and
custody of the child had been awarded to the mother. Re-
spondent, decedent's brother, answered this contention with
the allegation that the judgment in the divorce action be-
tween the mother and father was invalid. The contention
in reality was, therefore, that the adoption proceedings could
be collaterally questioned by collaterally questioning the
judgment in the divorce proceeding. No authority need be
cited to support the statement that one collateral attack
may not be pyramided upon another attack of the same kind.
But, disregarding that point, we find that in said case the
service of summons in the divorce proceeding was by pub-
lication upon an affidavit and order. In 1886, the year of
the death of Bernard Newman, these papers were not a part
of the judgment-roll and could not be considered. (See
Amendments to the Codes, 1875–76, p. 93.) The judgment
recited due service of the summons, default of defendant
and that service was by publication. An affidavit appeared
in the files impossible on its face, as it recited publication
before the suit was instituted and publication after the judg-
ment was entered. In other words, the recitals in the

judgment contradicted the affidavit of service. The court permitted to be filed *nunc pro tunc* an affidavit of service the facts of which are not stated. Thereupon the adoption proceedings were declared valid and the petitioner was appointed administratrix. The court in this behalf said: "The recital in the judgment that the defendant was duly served with process is consistent with the proof of service. It is the *fact of service* which gives the court jurisdiction—not the proof of service—and the court had authority to receive the amended affidavits of service after judgment and before the roll was made up. (*Mason* v. *Messenger,* 17 Iowa, 261; *Rickards* v. *Ladd,* 4 Pac. C. L. J. 52 [Fed. Cas. No. 11,804]; *Allison* v. *Thomas,* 72 Cal. 562 [1 Am. St. Rep. 89, 14 Pac. 309].) The affidavits of service and the recitals in the judgment are conclusive. The affidavit on application for an order of publication, and the order of publication, cannot be considered. They are no part of the roll."

The issue as to service being in doubt upon the face of the record, it may well be that a situation was presented to the court in that action with regard to which the following language of *Wharton* v. *Harlan,* 68 Cal. 422, 425 [9 Pac. 727], is applicable: "Moreover, since service of summons may be proved by affidavit, and the proof of nonservice may also be by affidavit, thus sometimes making an issue of fact, there may possibly be some reason for sending a defendant into a court of equity in that case which does not apply when the judgment is void for defects appearing in the roll (Code Civ. Proc., sec. 670, subd. 1), and which thus bears on its face the evidence of its invalidity."

Certainly in a collateral attack, the proof of service being in doubt, the judgment should not be disturbed. It is true that the court in the Newman case said by way of *obiter* this: "The fact that judgment was rendered upon default entered before the time allowing the defendant to answer had expired rendered the judgment erroneous simply, not void. A judgment thus rendered can be attacked only upon motion or by appeal, and by the parties in interest. Maldonado is the only party aggrieved by the decree, and he is the only one who can attack it in any way. (*Anderson* [*Alderson*] v. *Bell,* 9 Cal. 321; *Mitchell* v. *Aten,* 37 Kan. 33 [1 Am. St. Rep. 231, 14 Pac. 497].)" The reply to this

observation is, first, that it is not the same issue which is before us, as a valid answer, which is a prayer for hearing, is on file. Second, the case stands alone and is contrary to the weight of authority elsewhere. "At the expiration of the time allowed by law for the filing of an appearance or answer, judgment by default may generally be entered. Although it has been held that a judgment by default, rendered before time allowed defendant to answer has expired, is erroneous simply, the weight of authority is apparently to the effect that a judgment by default entered too soon is a nullity, and it has been said that to take a judgment by default before the return day is the same as signing a judgment without service of process at all." (15 R. C. L., p. 665, sec. 113, citing *Yentzer* v. *Thayer,* 10 Colo. 63 [3 Am. St. Rep. 563, 14 Pac. 53]; *Vohlers* v. *E. H. Stafford Mfg. Co.,* 171 Mich. 8 [Ann. Cas. 1914B, 1032, 137 N. W. 128]; *State* v. *District Court,* 42 Mont. 496 [Ann. Cas. 1912B, 246, 113 Pac. 472]; *Winslow* v. *Anderson,* 20 N. C. 9 [32 Am. Dec. 651].) Third, it is contrary to the line of later cases above cited, and if any conflict appears the Newman case must give way. Lastly, it is squarely and pointedly distinguished by the later case of *Reher* v. *Reed,* 166 Cal. 525, 528, 529 [Ann. Cas. 1915C, 737, 137 Pac. 263], a case exactly apposite to our present inquiry, wherein it is said: "It follows that on the face of the record it appeared that the clerk was without authority to enter the default, and, consequently, without authority to enter the judgment. In such a case the court may set aside the judgment of its own motion at any time, and it is immaterial how the invalidity is called to its attention. (*Wharton* v. *Harlan,* 68 Cal. 422, 425 [9 Pac. 727]; *Kelly* v. *Van Austin,* 17 Cal. 564; *People* v. *Greene,* 74 Cal. 404 [5 Am. St. Rep. 448, 16 Pac. 197].)" To the same effect see Ann. Cas. 1915C, page 738, note. Said declaration in the Newman case is also at variance with the cases of *Kelly* v. *Van Austin,* 17 Cal. 564, 565, 566, and *Junkans* v. *Bergin,* 64 Cal. 203, 204 [30 Pac. 627, 629]; both cases of collateral attack. In the latter case the court said: "When the *casus legis* does not exist, his entry of judgment is void and of no avail. This very point was determined in *Kelly* v. *Van Austin,* 17 Cal. 565, 566, where, as here, the judgment was collaterally attacked. This ruling

has been frequently approved." In this case the default was entered while an answer, though a belated one, was on file.

What is above said disposes of the cases of *Endowment Department, etc.*, v. *Harvey*, 6 Ala. App. 239 [60 South. 602, 604], and *Chehalis Coal Co.* v. *Laisure*, 97 Wash. 422 [166 Pac. 1158, 1160]. Furthermore we are not advised as to what constitutes the judgment-roll in those states. The main opinion cites no other cases requiring discussion.

It is no answer to this contention to say that the defendant was in duty bound to watch the calendar of the court to see if some action was being taken against him without notice and, so finding, he had the right of appeal. Such a position discounts the strength of the provision in our constitution requiring "due process of law." An appeal without evidence and without a chance to make a record is wholly insufficient to constitute a day in court and time need not be taken to cite authority on so evident a proposition. Likewise it is no excuse to say that a judgment void on its face may not be called into question by a party who has no beneficial interest thereunder or who is not injuriously affected thereby. The cases of *People* v. *Greene, supra, People* v. *Davis, supra,* and 15 R. C. L., *supra,* answer such contention beyond doubt. If such a judgment is a "dead limb upon the judicial tree" why may not a court of its own motion or at the behest of any other person, destroy the rubbish and decayed matter from the legal tree? Moreover, the defendant in this action is the identical person made a party to the judgment under examination. His failure to properly defend himself against said judgment might well bring him into an actionable position with one or the other parties thereto. Certainly said defendant has a legal duty to perform and should be allowed to perform it as he is the *alter ego* of one of the parties to the action in question.

The line of demarcation between void and voidable judgments is clearly marked and the judgment in question is void upon collateral attack in my opinion. This question I regard of grave importance for under a contrary holding any defendant over night might find himself in a position where he would have to go to the trouble and expense of

an appeal and in some cases he might discover his predicament too late to make direct attack on the judgment.

When a litigant submits to the jurisdiction of the legal forum and prays for a hearing he supplicates the throne of justice and not that of oppression. If he may not be heard, the court then becomes the executioner of one who has prayed for mercy and does exactly what it is organized to prevent. We should not hesitate, therefore, and weaken at the usurpation simply because the attack is collateral so long as the infirmity appears in a way to permit the attack, to wit, on the face of the judgment-roll.

Judgment of the court below was correct and should be affirmed.

SHENK, J., Dissenting.—I dissent. I am in accord generally with the views expressed by Mr. Justice Preston in his dissenting opinion. I entertain no doubt, however, that the attitude assumed by the respondent herein is in the nature of a collateral attack upon the judgment in the original action of *Gray* v. *Yarbrough*. (*Howe* v. *Southrey*, 144 Cal. 767 [78 Pac. 259] ; *Hamblin* v. *Superior Court*, 195 Cal. 364 [43 A. L. R. 1509, 233 Pac. 337].) When such an attack is made an inspection of the judgment-roll alone must disclose whether the judgment is void for want of jurisdiction of the court to pronounce it or is merely the result of error in the exercise of jurisdiction. The main opinion holds that the judgment was erroneous and subject only to direct attack. With this conclusion I am unable to agree. In brief, an inspection of the judgment-roll shows that the court rendered the judgment on the merits when the case was at issue on questions of fact and without notice to the defendant or any opportunity afforded him to be heard. This action on the part of the court was, I think, in excess of its jurisdiction. As said by this court in *Pioneer Land Co.* v. *Maddux*, 109 Cal. 633, at page 642 [50 Am. St. Rep. 67, 42 Pac. 295, 297], quoting with approval from Mr. Van Fleet on ''Collateral Attack,'' section 16: ''In order to make a judgment void collaterally; either 1. A legal organization of the tribunal; or 2. Jurisdiction over the subject matter; or 3. Jurisdiction over the person must be wanting; or 4. One or more of these matters must have been lost after it once existed. When either one of these defects can be

shown, the judgment and all rights and titles founded thereon are void. . . . When a judgment is lacking in any of the foregoing particulars, it matters not whether it was rendered by the highest or the lowest court in the land—it is equally worthless. No one is bound to obey it. The oath of all officers, executive, legislative or judicial compels them to disregard it." Assuming that the court in the action of *Gray* v. *Yarbrough* acquired jurisdiction of the person of the defendant in the first instance by the service of summons upon him and his appearance, it is clear to me that the jurisdiction so acquired was not continuing so as to empower the court to hear the cause upon issues of fact joined and pronounce judgment against him *ex parte*. In harmony with and in furtherance of the constitutional requirement of due process of law, the legislature has prescribed that when a case is, as here, at issue on questions of fact the adverse party must have notice of trial. (Sec. 594, Code Civ. Proc.) That section of the code has been applied in numerous instances; but in no case, to my knowledge, has it been held, where the point was directly involved, that the required notice was not jurisdictional. In *Uplinger* v. *Yonkin,* 47 Cal. App. 435 [190 Pac. 822], it was held that the requirements of that section did not apply to a defaulting defendant. It is true the court then went on to say that even when the requirements of the section are applicable, a trial and judgment given without such notice is merely erroneous, citing *Estate of Dean,* 149 Cal. 492 [87 Pac. 13]. But the Dean case was a direct appeal and the holding therein went no further than to declare that the failure to give notice of trial was prejudicially erroneous and would necessitate a reversal. The question of collateral attack was not involved in either case. In *Clark* v. *Superior Court,* 55 Cal. 199, referred to in the main opinion, a trial on the merits had taken place in the old district court, all parties being present. Findings and judgment had been signed by the court, but were not filed until after the new constitution became effective. The question of whether the court had jurisdiction of the parties was not involved. In fact, the statement of the court, quoted in the main opinion, recognizes that jurisdiction of the parties must exist. Furthermore, the quoted statement is *obiter*.

In the present case no disputed question of fact is involved. On the record the main opinion declares correctly that the original cause was at issue, was heard and decided by the court and judgment pronounced without notice to the defendant. In such case it is not correct to assume, as is assumed in the main opinion, that the court had continuing jurisdiction of the person when notice of hearing under the law was necessary. The judgment on its face shows the defect of want of jurisdiction of the person. It is, therefore, void and ''may be attacked anywhere, directly or collaterally, whenever it presents itself, either by parties or strangers. It is simply a nullity and can be neither the basis nor evidence of any right whatever.'' (*Forbes* v. *Hyde*, 31 Cal. 342, 347; *Estate of Pusey*, 180 Cal. 368, 374 [181 Pac. 648].) Even the affirmance of such a judgment on appeal could not make it valid. (*Pioneer Land Co.* v. *Maddux, supra; Ball* v. *Tolman*, 135 Cal. 375 [87 Am. St. Rep. 110, 67 Pac. 339].)

In my opinion the respondent clerk was justified in disregarding the judgment relied on by the appellant. It imposed upon him no duty enjoined by law and the trial court was right in denying the writ of *mandamus*.

Rehearing denied.

Shenk, J., and Preston, J., dissented.