[L. A. No. 15112.   In Bank.—April 30, 1935.]

HENRY GRIVI, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Wm. H. Neblett, R. Dean Warner and E. H. Mitchell for Petitioner.

Everett W. Mattoon, County Counsel, and J. F. Moroney, Deputy County Counsel, for Respondents.

THE COURT.—This is an application for writ of mandate by which it is sought to compel the respondent court to strike from its files—and in particular from the records

of the case of *McAdoo* v. *McAdoo*—a document entitled
"Report of Presiding Judge". It appears that on July 17,
1934, a divorce complaint was filed in the respondent court
by Mrs. McAdoo against her husband. On the same day
an answer was filed by the defendant admitting all of the
allegations, except those relating to extreme cruelty. He
denied that any conduct on his part had caused the plaintiff
any grievous or mental suffering. On the same day, the
papers in the case were taken before Judge Campbell, of
Kern County, sitting at the time, by assignment of the
chairman of the Judicial Council, in Los Angeles, and, upon
stipulation waiving notice of the time and place of trial,
the case was tried by Judge Campbell, who granted Mrs.
McAdoo an interlocutory decree.

Rule VIII of the Rules of the Superior Court, adopted
by the Judicial Council, provides: "In all counties having
a presiding judge, cases shall be set for trial under the
supervision of the presiding judge." (213 Cal. lxxxv.)
Los Angeles is such a county. Rule XVI says: "In all
counties having more than sixteen (16) judges, the presiding
judge from time to time shall designate one or more de-
partments as the department or departments in which a
master calendar shall be set for the civil departments. Upon
the calendar of such department or departments shall be
set all civil cases to be tried during the period for which
such calendar is set." Rule III also provides in effect that
the presiding judge shall supervise the setting for trial of
all civil causes and Rule I says, among other things, that
when a case is set for trial upon stipulation "the latter shall
be accompanied by a corresponding memorandum"—i. e., a
memorandum "which shall state that the cause is at issue,
. . . the number and title of the cause, the nature of the
cause, the time estimated for the trial thereof" and other
pertinent information. Rule VII says: "Nothing in these
rules shall prohibit setting for trial at any time, and in any
department, any case which can be tried within a period of
time not exceeding one hour."

Under section 129 of the Code of Civil Procedure the court
has authority to "make rules not inconsistent with the rules
adopted and prescribed by the judicial council or the laws
of this state for its own government and the government of
its affairs." We find in the rules of the Superior Court of

Los Angeles, adopted pursuant to this section, certain provisions as follows: ''The business of this court shall be supervised by one of the judges, to be known as the Presiding Judge. . . . '' (Rule I, sec. 2.) ''All civil actions and proceedings shall at the time of their filing be deemed assigned to the department of the Presiding Judge and shall be deemed pending in such department until assigned elsewhere; . . . '' (Rule I, sec. 4) and

''The Presiding Judge shall supervise the condition of the trial calendar of the court, including the master calendars, and shall readjust the assignment of causes at issue, at or before the time of trial thereof, in such manner as best to dispose of the business, . . . '' (Rule I, sec. 4.)

Following the trial of the divorce case mentioned the presiding judge made an investigation of the incidents leading up to the trial of the case on the same day the action was started and caused to be filed in the case the document mentioned which reads as follows:

Report of Presiding Judge.

''My investigation into the case of *McAdoo* v. *McAdoo* has resulted in the following findings:

''On the day the case was filed, some woman telephoned my secretary and asked if there were any 'out-of-county' judges sitting here. Upon receiving an affirmative reply, she then asked if there was a Judge Campbell and where he was sitting and the location of his court room. Upon receiving the information requested, the woman hung up the telephone.

''The same day and before the trial, some one telephoned Judge Allan B. Campbell asking him if he would try a divorce case. He said he would, as he was 'here to try cases' and told the inquirer to bring in the case at either one-thirty or four-thirty p. m. The name of the case was not disclosed.

''Judge Campbell was not familiar with the practice of this court, which requires that all default divorce cases be set through the calendar department, and he is therefore in no manner to blame for the irregular handling of this case. Judge Campbell comes from Bakersfield, where there are only three judges, and any one of them tries any default case as and when it is presented to him.

"In this court, however, the rule for handling default divorce cases is entirely different. They are, by the Calendar Department, sent in regular rotation to each of our judges except those in the criminal departments and those who have expressed a desire not to handle them. Only those attorneys who desire to 'slip something over' attempt to do otherwise.

"As presiding judge, I have on several occasions called back files from departments where the same irregularity was practiced or attempted to be practiced.

"That Mr. Grivi, Mrs. McAdoo's attorney was aware of our regular procedure is to me certain and beyond question. That his conduct in this case was irregular and subject to severe censure, is likewise beyond question.

"His actions in this case in violating the well-known method of procedure and in taking advantage of the lack of knowledge of a visiting judge, are contemptible, if not contumacious. He has the brazen effrontery to still assert this his conduct of the case has been regular in all respects.

"By his actions he has brought this court into disrepute; he has caused an innumerable group of people to believe that there is one procedure, slow and tedious, for the poor; and another, quick and active, for the rich or prominent; he has placed the ethical and conscientious members of the bar, who will not stoop to such practices and 'slip things over', in a very embarrassing position with their clients.

"I am informed that the State Bar of California is investigating this matter and I shall lend to it all the assistance in my power.

"To prevent a repetition of such irregularities, I have today instructed Mr. L. E. Lampton, the county clerk, to allow no attorney or litigant to take any divorce file away from the counter. If they are needed in any department of the court, he is to send them to such department by one of his deputies or messengers. Much inconvenience may be thus caused to ethical practitioners at the bar. They can thank such men as Mr. Grivi for it.

"I have also ordered Mr. Lampton to instruct each of his court clerks to call the attention of their respective judges to each and every case wherein the regular setting procedure has not been followed.

"I shall do my utmost to see that a repetition of these irregularities does not occur again.

"As I have before stated, the irregularity in the McAdoo case is not such an one as has any effect on the decree rendered therein. It does, however, affect the standing before this court of the plaintiff's attorney, to his discredit."

Thereafter and on August 1, 1934, counsel for defendant therein made a motion to strike the document from the records on the ground that it was not connected with any issue in the case, and several other reasons, which it is not necessary to enumerate.

The parties through their counsel stipulated that the order sought might be made, but it was denied by the court on August 6, 1934. It appears from a transcript of the proceedings with respect to the document, which the parties hereto stipulated this court should examine for the purpose of determining the facts regarding the motion that the respondent court strike the document from the files, that the defendant has appealed from the order refusing to strike.

The respondents suggest two propositions as a reason why the writ should not issue. First: it is asserted that a proceeding in *mandamus* is a collateral attack upon the judicial action for which reason the truth or falsity of the order or record may not be assailed by evidence of facts not appearing therein. Second: assuming the correctness of the first it is contended that the Presiding Judge had the jurisdiction to make and file the report.

It cannot be doubted that the writ of *mandamus* does not lie to correct errors of an inferior tribunal and in so far as it seeks to avoid the force or effect of a judgment or order of the court it constitutes a. collateral attack thereon. (*Gray* v. *Hall*, 203 Cal. 306 [265 Pac. 246]; *Howe* v. *Southrey*, 144 Cal. 767 [78 Pac. 259].) We are therefore to accept the facts appearing on the face of the record and limit our inquiry to the question of whether there was jurisdiction in the judge to file the report of which complaint is made. We cannot, however, agree with respondents that such jurisdiction existed. We may assume that under the rules of court heretofore mentioned the judge had the power to investigate a violation or an alleged infringement of the rules of the court by a practitioner at the bar (assuming the facts to be as stated in the report

there can be no doubt that the attorney had violated those rules), but certainly, as he confesses in the written report, the irregularity had no effect upon the interlocutory decree. The report had nothing whatever to do with any issue in that case. There are three possible uses (perhaps more) which could have been made of the information secured by the Presiding Judge. He might have made it the basis of a report to his fellow judges for the purpose of devising a method to prevent a recurrence of the situation. Or, assuming the facts to be as stated, it might have become the foundation for a contempt proceeding, or possibly, as suggested, for a disciplinary action. All of these suggestions have to do with the conduct of the attorney, rather than with the rights of the litigants in the divorce action. It purports, however, to be none of these. Certainly as a contempt proceeding, the lack of ·the necessary steps to vest the court with jurisdiction is apparent. Assuming the power of the court to discipline its officers in proper cases, the record likewise discloses that no preliminary proceedings to acquire jurisdiction over the attorney had been taken. Conceding the power of the court to institute one of the proceedings mentioned as à direct action against counsel it lacked jurisdiction to make such proceeding ancillary to the divorce action. It was in fact an *ex parte* 'investigation made by the judge in the course of his administrative duties without notice to the attorney and he was without jurisdiction to cause it to be spread upon the records of the divorce action.

It being manifest, for the foregoing reasons, that the document has no place in the case the peremptory writ ought to issue. It is so ordered.